WILLIAM HILL, Appellant, v. THE MAYOR, ALDERMEN AND
    COMMONALTY OF THE CITY OF NEW YORK, Respondent.

The rule that a municipal corporation, engaged in the performance of a
    public duty upon which the public health and comfort depends, and
    acting under authority of the legislature, is not liable for conse-
    sequential damages to others, even though its act would amount to a
    nuisance as between individuals, has this limitation: the authority must
    be express, or a clear and unquestionable implication from powers
    conferred; it must be certain and unambiguous, and such as to
    show that the legislature must have contemplated the very act in
    question.

Defendant owned one-half of a pier in the East river and plaintiff the
    other, the dividing line running lengthwise of the pier, each holding
    in severalty, not as joint tenants or tenants in common, and neither
    having any private easement in the half belonging to the other.
    The pier was thirty-five feet wide, and for many years had been used by
    sailing vessels. Defendant built on its half an elevated structure for
    the dumping of sweepings and refuse from the city streets into scows.
    This structure occupies one-half of the entire width of the pier, totally
    excluding the public and plaintiff from any possible use of defendant's
    half, except for a short distance at each end, and so limits the use of the
    other half that trucks cannot pass each other thereon, and cannot turn
    around opposite the structure, in consequence whereof vessels are no
    longer unloaded at the pier and plaintiff's wharfage has seriously dimin-
    ished. The refuse and garbage thrown upon the scows and left on the
    pier create a stench, and that which falls off from the scows into the
    water largely increases the amount of dredging necessary to be done on
    plaintiff's side of the pier. In an action to compel defendant to remove
    said structure, held, that plaintiff was entitled to the relief sought;
    that no express or implied authority to erect the structure was given by
    the New York Consolidation Act (Chap. 410, Laws of 1882); that the
    provisions thereof authorizing the commissioner of street cleaning to
    procure scows and tugs necessary for his work (§ 706), and requiring
    the authorities having control of the public piers to set apart for his use
    suitable piers, contemplated simply a shipment of the refuse from the
    streets by water, and the use of piers for that purpose; that they do not
    contemplate the selection of half a pier, and so exposing the owner
    of the other half to inevitable injury; nor do they authorize the erec-
    tion of a permanent structure which prevents the public use of the
    pier, or authorize the use of it as a storehouse for scavangers' refuse.

(Argued October 9, 1893; decided October 24, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 31, 1892, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

This action was brought to compel the removal of a structure erected by the city of New York on the west side of pier 12, East river. An injunction was also prayed for against the use of the pier for the purposes complained of.

The facts, so far as material, are stated in the opinion.

*Thomas . G. Shearman* for appellant. The city owned no part of the pier. (*Swinnerton* v. *C. Ins. Co.*, 37 N. Y. 174; *People* v. *Snyder*, 41 id. 397.) The legislature has not attempted to give this pier to the city. (*People* v. *B. & O. R. R. Co.*, 50 Hun, 192, 193; *Comrs. of Pilots* v. *E. R. Co.*, 5 Robt. 366, ·381, 382; Penal Code, § 385; *Davis* v. *Mayor, etc.*, 14 N. Y. 506, 524; *Comrs. of Pilots* v. *Clark*, 33 id. 266; *Cohen* v. *Mayor, etc.*, 113 id. 532, 537; 1 Dill. Mun. Corp. [4th ed.] § 383; 2 id. § 657; *People* v. *Thompson*, 98 N. Y. 6; *People* v. *Newton*, 112 id. 396, 403; *In re U. F. Co.*, 98 id. 139; *Cushing* v. *City of Boston*, 128 Mass. 330; *Stormfeltz* v. *Turnpike Co.*, 13 Penn. St. 555; *Milarkey* v. *Foster*, 6 Oreg. 378; *Wartman* v. *City of Philadelphia*, 33 Penn. St. 202; *St. John* v. *Mayor, etc.*, 3 Bosw. 483; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; Laws of 1882, chap. 410, §§ 715, 724.) The statute is not to be construed as authorizing confiscation. (*N. Y. & O. R. Co.* v. *Van Horn*, 57 N. Y. 473; *People* v. *O'Brien*, 111 id. 59; *Lahr* v. *M. E. R. Co.*, 104 id. 268; *Drucker* v. *M. R. Co.*, 106 id. 157; *Sperb* v. *M. E. R. Co.*, 137 id. 155; *Moore* v. *N. Y. E. R. Co.*, 130 id. 523; *Cogswell* v. *N. Y. & N. H. R. Co.*, 103 id. 10.) The legislature has no power to confiscate this pier. (1 Dill. on Mun. Corp. § 107; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Williams* v. *Mayor, etc.*, 105 id. 419.) The use of the west side of pier 12 for dumping purposes is prohibited. (Laws of 1882, chap. 410, §§ 786, 788). The

fact that the use of this pier for dumping purposes may be convenient to the city and may save its street cleaning department some expense is no justification for using this particular pier as a dumping ground. (*Rex* v. *Ward*, 4 Ad. & El. 460; *Rex* v. *Tindall*, 6 id. 143; *Davis* v. *City of New York*, 14 N. Y. 506; *People* v. *Vanderbilt*, 26 id. 287, 298; *People* v. *Newton*, 112 id. 396, 407; *Comrs. of Pilots* v. *Clark*, 33 id. 251; *People* v. *Thompson*, 98 id. 6; *In re N. F. & N. R. Co.*, 108 id. 383.) The dumping board being a public nuisance, which has not been expressly authorized by the legislature, the plaintiff is entitled to the relief asked for. (*Roosevelt* v. *Draper*, 23 N. Y. 318; *Francis* v. *Schoellkopf*, 53 id. 152, 154; *Ayres* v. *Lawrence*, 59 id. 192; *Milhau* v. *Sharp*, 27 id. 611; *Campbell* v. *Seaman*, 63 id. 568; *Knox* v. *Mayor, etc.*, 55 Barb. 404; *Corning* v. *Lowerre*, 6 Johns. Ch. 439; *People* v. *Vanderbilt*, 26 N. Y. 287; *Crooke* v. *Anderson*, 23 Hun, 266; *Negus* v. *City of Brooklyn*, 10 Abb. [N. C.] 180, 183; *Hodges* v. *City of Buffalo*, 2 Den. 110; 14 N. Y. 506, 510.) But if the plaintiff did not make out a case for equitable relief, by removal or injunction, the court none the less erred in dismissing the complaint. The plaintiff is entitled to have the action retained for such relief, legal or equitable, as the facts will warrant. (*Rogers* v. *N. Y. & T. L. Co.*, 134 N. Y. 197, 219; *Murtha* v. *Curley*, 90 id. 372, 377; *Wetmore* v. *Porter*, 92 id. 76; *Williams* v. *Slote*, 70 id. 601; *Wright* v. *Wright*, 54 id. 437; *Phillips* v. *Gorham*, 17 id. 270; *Emery* v. *Pease*, 20 id. 62.)

*David J. Dean* for respondent. The dumping board constructed on the westerly half of pier No. 12, East river, is a legal structure. (Laws of 1881, chap. 367, § 4; Laws of 1883, chap. 435; Laws of 1882, chap. 410, §§ 706, 728, 773; *Spratt* v. *Huntington*, 48 How. Pr. 101; *Delafield* v. *Brady*, 108 N. Y. 529; *People ex rel.* v. *McCall*, 94 id. 587; *Weiler* v. *Newback*, 47 Hun, 168; *People* v. *O'Brien*, 111 N. Y. 59.) Sections 706, 728 and 773 of the New York City Consolidation Act should be read and construed together. (Laws

of 1889, chap. 509.) The easterly and westerly sides of pier 12, East river, have for more than thirty years been regarded as separate piers. (Laws of 1857, chap. 367; Laws of 1882, chap. 410, § 786.) This court should not order the dumping board to be removed or declare the use of it a nuisance. (12 How. Pr. 1; Laws of 1855, chap. 474, § 6; *Donohue* v. *Mayor, etc.*, 3 Daly, 65; *Seifert* v. *City of Brooklyn*, 101 N. Y. 136; *Paine* v. *Village of Delhi*, 116 id. 224; *Ratcliffe* v. *Mayor, etc.*, 4 id. 195; *Bellinger* v. *N. Y. C. & H. R. R. R. Co.*, 23 id. 42; *Moyer* v. *N. Y. C. & H. R. R. R. Co.*, 88 id. 351; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98; *T. Co.* v. *City of Chicago*, 99 U. S. 635, 641; *W. W. M. Co.* v. *Shanahan*, 128 N. Y. 345; *Benner* v. *A. D. Co.*, 134 id. 156; *Henry* v. *Company*, 8 W. & S. 85; *M. Co.* v. *Coons*, 6 id. 101; *In re P. & D. Co.*, 1d. 43; *In re Furman Street*, 17 Wend. 667; *Kavanagh* v. *City of Brooklyn*, 38 Barb. 232; *Waddell* v. *Mayor, etc.*, 8 id. 95; *Davis* v. *Mayor, etc*, 14 N. Y. 506; *Cohen* v. *Mayor, etc.*, 113 id. 536; *Urquhart* v. *City of Ogdensburgh*, 91 id. 57; *Mills* v. *City of Brooklyn*, 32 id. 489; *Wilson* v. *City of New York*, 1 Den. 595; *Bohan* v. *P. J. G. L. Co.*, 122 N. Y. 18; *Conklin* v. *N. Y., O. & W. R. Co.*, 102 id. 105; Cooley on Const. Lim. [6th ed.] 666; *Sprague* v. *City of Worcester*, 13 Gray, 193; *Brown* v. *C. R. R. Co.*, 12 N. Y. 486; *Pumpelly* v. *G. B. Co.*, 13 Wall. 166–180; *Eaton* v. *B. C. & M. R. R. Co.*, 51 N. H. 504; *Hamilton* v. *V., etc., R. R. Co.*, 119 U. S. 280; *Atwater* v. *Trustees, etc.*, 124 N. Y. 602; *S. M. Co.* v. *State*, 104 id. 562.) The statutory authority which justifies defendants in maintaining the dumping board, alleged by plaintiff to be a nuisance, is express, clear and unquestionably conferred and contemplated the doing of the very thing which, it is alleged, causes the injury to the plaintiff. (*Bohan* v. *P. J. G. L. Co.*, 122 N. Y. 18; *B. & P. R. R. Co.* v. *F. B. Church*, 108 U. S. 317; *Com.* v. *Kidder*, 106 Mass. 188.) The legislature may authorize acts which would otherwise be a nuisance when they affect or relate to matters in which the public have an interest. (*Rad-*

*cliffe* v. *Mayor, etc.*, 4 N. Y. 195; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 id. 42.) The words "free commerce" have no technical significance, and are meaningless, unless read in connection with the original sections of the Consolidation Act bearing upon the subject. (Laws of 1882, chap. 410, § 786.) It must have appeared that the injunction which plaintiff sought to obtain in this action was needed, among other things, to prevent serious danger to human life, or serious detriment to health, and as he failed to prove that it was imperatively necessary to prevent the consequences above described, he did not show such a case as entitled him, as matter of right, to the relief which he demanded. (*Health Dept.* v. *Purdon,* 99 N. Y. 237.)

FINCH, J. We may concede almost every proposition urged by the defendant without reaching the question upon which the judgment rendered finally depends.

I shall assume, therefore, without so deciding, that the plaintiff owns the east side of pier No. 12, and the defendant the west side; that each holds his specific half in severalty and not as joint tenant, or tenant in common with the adjacent owner; that neither has any private easement in the half adjoining his own, but only such right as flows from the public character of the pier; that what the defendant has done does not amount to a taking of the plaintiff's property, but merely inflicts upon him more or less of special damage which he suffers beyond that borne by the public; that the law of 1881, which authorizes the setting apart of piers owned by or under the control of the city for the use of its street cleaning department, has not been repealed, but has survived the confusion and complications of the legislation relating to the city, and remains in full force and operation; and that the question presented is solely and alone whether by that enactment the city is protected from a recovery for the damage it has done. All of the defendant's propositions are debatable, and about some of them we have disagreed among ourselves, but we choose to leave them open so far as the present opinion is

concerned, since conceding them to the respondent we nevertheless do not see how the judgment against the plaintiff can be sustained.

There is practically no dispute about what the city has done and the plaintiff has suffered. The pier is four hundred and fifty-four feet long and nearly thirty-five feet wide, and for many years had been used by sailing vessels drawing eighteen feet of water and more, coming from all parts of the world. On the west half of this pier the city has built what is called a dumping board for convenience in loading upon scows the sweepings and refuse of the city streets. This structure is ten feet high and a little more than three hundred and one feet in length, and with the girder and string-piece along its easterly line occupies a width of seventeen feet and five inches, or fully one-half of the entire breadth of the pier. It is inclosed on the sides facing the plaintiff's ownership, except that there are doors through which persons can enter beneath the cartway above. To get upon it there is an inclined approach beginning about seventy-five feet from South street, up which the dust carts pass to the platform, and ranging along it their contents are transferred into scows to be towed out to sea. This structure totally excludes the public and the east side dock owners from any possible use of the west half of the pier, except for a short distance at each end. It does more than that. It so narrows and limits the unobstructed half of the pier owned by plaintiff and his associates, that trucks coming upon it cannot pass each other, and many of them cannot turn around at any point opposite the dumping board. The consequence is that vessels are seldom unloaded at this pier because there is no sufficient room for the landing of cargo, and the handling of trucks to remove it, and as a necessary result the wharfage on the east side has seriously diminished, and has come almost entirely from vessels mooring at the pier to be loaded which had unloaded elsewhere.

But beyond the effect of the structure itself, there are proved to exist injurious consequences flowing from the manner of its use. The refuse thrown upon the scows and piled

up much higher than its sides is sorted over by Italian scavengers, who pick out bones and bottles and cans, and whatever they can turn into use, and throw the ill-smelling and filthy collection upon the surface of the pier, where it remains sometimes for days until it is taken away by its owners through the doors which have been described, and by the use for that purpose of the half of the pier belonging to the plaintiff. The stench arising from these collections and from the sweepings and garbage loaded upon the scows, often waiting for favorable weather in which to be towed away, is described on one side with a vigor scarcely to be repeated on pages which should be clean, and on the other with a moderation equally remarkable in its way. The witnesses tell us how the ashes and refuse fall off from the scows into the water, and nearly double the amount of dredging necessary to be done on the plaintiff's side of the pier, and how they are borne by the wind in clouds, thick and not quite fragrant, over all the vicinity. It is apparent and beyond reasonable question that what the city has done and is doing on its half of the pier is something far removed from its proper and normal use, which, as between individuals, would be an undoubted nuisance, and which inflicts upon this plaintiff a special damage beyond that suffered by the public.

But to this the city answers that what it has done has been under the authority of law; that as a municipal corporation, engaged in the performance of a public duty, upon which the public health and comfort depends, and acting by express authority of the legislature, it is not liable for consequential injuries resulting to others, even though its acts would amount to a nuisance as between individuals. It cites abundance of authority for the general doctrine, running from *Radcliff* v. *Mayor* (4 N. Y. 195) and *Bellinger* v. *N. Y. Cent. R. R.* (23 id. 42) down to *Atwater* v. *Trustees of Canandaigua* (124 id. 602). We need not discuss the cases, or consider how broadly the doctrine should be permitted to operate, since one condition or limitation has been firmly grafted upon it, which raises the final and ultimate question in the case before us. That

limitation is that the authority which will thus shelter an actual nuisance must be express, or a clear and unquestionable implication from powers conferred, should be certain and unambiguous, and such as to show that the legislature must have contemplated the doing of the very act in question. For, consider what the proposition is. It upholds a positive damage to the citizen and denies him any remedy; it infringes his normal and recognized rights with absolute impunity; it sets a nuisance at his door utterly unbearable and requires him to bear it. Surely, an authority which so results should be remarkably strong and clear. In *U. S.* v. *Fisher* (2 Cranch, 390), Chief Justice MARSHALL said: "Where rights are infringed, where fundamental principles are overthrown, where the general system of the laws is departed from, the legislative intention must be expressed with irresistible clearness to suppose a design to effect such objects." In *Cogswell* v. *N. Y., N. H. & Hartf. R. R. Co.* (103 N. Y. 10), Judge ANDREWS said: "But the statutory sanction which will justify an injury to private property must be express, or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the legislature contemplated the doing of the very act which occasioned the injury." And in *Bohan* v. *Port Jervis Gas Light Co.* (122 N. Y. 18), the same rule was asserted.

We must now examine the authority which the city sets up as a shield and see if it is adequate, within the limitation stated, to warrant the acts done. It is the act of 1881 (Chap. 367, § 4), which was transplanted into the Consolidation Act as section 706. It forms a part of the general scheme organizing the street cleaning department of the city and reads thus: "The department, bureau or city officer, authority or authorities, which shall, from time to time, have the management and control of the public docks, piers and slips of the city, shall designate and set apart for the use of said commissioner, suitable and sufficient slips, piers and berths in slips, located as the said commissioner may require, and such as shall be convenient and necessary for his use in executing the

duty hereby imposed upon him, excepting slips, docks and
piers on the East river set apart for the use of canal boats.
The said commissioner may, with the approval in writing of
the board of estimate and apportionment, lease piers, slips
and wharves for the necessary purpose of the duties by this
chapter conferred, whenever suitable piers, slips or wharves
owned by or under the control of the city cannot be obtained,
or are not set apart and designated as in this section provided."
Undoubtedly we ought to read this authority in connection
with the duties imposed upon the department by the rest of
the chapter. The commissioner was to clean the streets and
remove ashes and garbage and snow. (§ 704.) What he
should do with them is not dictated except by inference. He
is authorized to contract for their final disposition (§ 709); to
provide for burning the refuse and obtain land for such pur-
pose (§ 710); and hire or buy steam tugs, scows, boats and
vessels necessary for his work. (§ 705.) It is a reasonable
inference from the latter provision and from § 706, which I
have quoted at length, that the legislature contemplated a
shipment of the refuse by water and the use of piers or slips
for that purpose, but that is all. Nothing else beyond such
use of a pier or piers for the shipment of refuse was author-
ized or contemplated. It was a pier, not part of a pier, that
was to be designated. I admit that the greater includes the
less, and that half of a pier might be designated and set apart.
What I mean to say is, that the legislature, using the word
" pier," cannot be said to have contemplated the selection of
half of a pier and so exposing private owners of the other half
to the inevitable injury of such a selection. No such purpose
is involved in the words used. Beyond that, there is no
language anywhere which can fairly stretch the legislative
purpose further than to permit the ordinary, usual and well-
understood use of a pier, to which boats could be moored,
upon which things could be landed and from which they could
be loaded and shipped. Let us remember that the pier to
be designated was by the law itself described as a public pier,
and that there is not a word in the whole chapter which indi-

cates in any manner that it should cease to be a public pier, or that the public should be permanently and absolutely excluded from any part of it.   It cannot be said, and would be an abuse of language to say, that an authority to use a public pier for the shipment of street sweepings is an authority to build upon it such a structure as exists, which permanently excludes the public use, and then to make it a storehouse for the collection of a scavenger's refuse.   Argument can scarcely make the point any plainer.   Put the authority conferred and the acts done side by side and it is perfectly obvious from the comparison that no express or implied authority was given for the latter, and that the legislature never contemplated such a nuisance as is shown to exist.   The law went no further than to allow the use of a pier for the shipment of the street sweepings, if such disposition of them should prove to be necessary or convenient.   The use authorized could only have been such as belonged to and characterized that of a public pier.   If the commissioner had moored his barges to the west side and driven his dust carts along the surface and unloaded them into the scows he would have done all that the law can be said to have authorized or contemplated.   That would not have permanently obstructed the west half of the pier and excluded the public therefrom, or prevented trucks from passing each other or vessels from unloading, or made the dock a place of deposit for the findings of scavengers.   There might have been dust and possibly unpleasant odors which the plaintiff would perhaps have been compelled to bear, but the main and substantial evils of which he complains are not within the express scope of the authority, or of any just inference from the powers conferred.

The parallel between the *Cogswell* case and the one at bar is worth noting.   In the former the authority was to run cars over an existing road into New York city, which made necessary an engine house at the terminal point; in the latter it is to remove refuse by water, which makes necessary the use of slips and piers; in the one the engine house was built adjacent to the plaintiff's dwelling, and so filled it with smoke and

cinders and noxious gases as to render it practically uninhabitable; in the other the public pier used was the half adjacent to the plaintiff, and was so obstructed as to permanently exclude the public and seriously damage the adjoining ownership; in the earlier case we refused to stretch the authority given so as to legalize the engine house; in the one before us we similarly refuse to stretch the authority so as to cover a destruction of the public character and public use of the pier, and a transformation of it into a nuisance destructive of adjoining interests.

Obviously, the general doctrine which levies upon individuals forced contributions for the benefit of the public, and denies compensation for the injury done, is vulnerable at two points. It is defeated sometimes by construing the harm inflicted into a taking of private property for which compensation must be made, and sometimes by a rigid construction of the authority claimed. Both methods indicate a lurking doubt of the equity of the general doctrine and a disposition to narrow the field of its operation. But we need not discuss it in this case since it is very clear that it can furnish no protection to the city against the redress sought by the plaintiff.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.