LEVI P. MORTON, Respondent, *v.* THE MAYOR, ALDERMEN AND
COMMONALTY OF THE CITY OF NEW YORK, Appellant.

While legal liability in damages cannot result from acts of a municipal
corporation, done in the performance of a public duty by express legis-
lative authority, which as between individuals would be regarded as a
nuisance, and which result in injury to another, the authority must
be express, or a clear and unquestionable implication from powers
conferred, and must be certain and unambiguous, showing that the
legislature must have intended and contemplated the very act in
question.

A general authority to build a pumping station, without designating the
site, but leaving that to the selection of the corporation, does not confer
power upon it, either expressly or impliedly, to construct it so near the
lands of another as to destroy or seriously injure the rental value thereof.

Under authority given by the act of 1878 (Chap. 386, Laws of 1878), pro-
viding for the extension and enlargement of the distribution of Croton
water in the city of New York, the city erected upon lots owned by it a
building in which it placed pumping engines, machinery, etc.  Some
years thereafter a row of brick houses were built on a lot adjoining those
of the city, the nearest one being close to the division line.  In an action
brought by the owner of such buildings against the city to recover
damages for injuries which it appeared were caused by the operation of
the pumps and machinery, the noise and vibration rendering some of
the houses untenantable, or greatly reducing the rental value, *held,*
that defendant was liable; that while it was authorized by the legis-
lature to erect the building and place the necessary machinery therein,
it was not authorized to place them so near to adjoining property as to
injuriously affect it; that the duty imposed upon it would have been
performed by building the pumping station at such a distance from
plaintiff's premises as to avoid the results of which he complains.

(Argued October 17, 1893; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made July 28, 1893, which reversed a judgment in favor of
defendant entered upon a decision of the court on trial at
Circuit.

This action was brought to recover damages for injuries to
certain houses belonging to plaintiff in the city of New York,
arising from the maintenance by defendant of a pumping

station used in connection with the supply and distribution of Croton water adjacent to plaintiff's premises.

The facts, so far as material, are stated in the opinion.

*Charles J. Blandy* for appellant. The pumping station in question was erected and maintained under the direct authority and sanction of the legislature. (Laws of 1878, chap. 386.) The plaintiff was not entitled to any judgment against the defendants growing out of the facts proved. There being no question of negligence, the plaintiff was bound to submit to his inconvenience and damage, because the pumping station was a lawful structure engaged in doing work of a public character and for the public good. (*Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42; *Radcliff* v. *Mayor, etc.*, 4 id. 195; *Graves* v. *Ottis*, 2 Hill, 466; *Wilson* v. *Mayor, etc.*, 1 Den. 595; *Mills* v. *City of Brooklyn*, 32 N. Y. 489; *Henry* v. *Company*, 8 W. & S. 85; *M. Co.* v. *Coons*, 6 id. 101; *In re P. & D. Co.*, 6 Whart. 43; *Seifert* v. *City of Brooklyn*, 101 N. Y. 136; *Kavanagh* v. *City of Brooklyn*, 38 Barb. 232; *Waddell* v. *Mayor, etc.*, 8 id. 95; *Davis* v. *Mayor, etc.*, 14 N. Y. 506; *Cohen* v. *Mayor, etc.*, 113 id. 536; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98; *Conklin* v. *N. Y., O. & W. R. Co.*, 102 id. 107; Cooley on Const. Lim. [5th ed.] 671; *Mayer* v. *N. Y. C. & H. R. R. R. Co.*, 88 N. Y. 351; *Kane* v. *N. Y. E. R. R. Co.*, 125 id. 166; *W. W. M. Co.* v. *Shanahan*, 128 id. 345; *S. M. Co.* v. *State*, 104 id. 562; *Rexford* v. *Knight*, 11 id. 313; *A. B. N. Co.* v. *N. Y. E. R. R. Co.*, 129 id. 252; *Benner* v. *A. D. Co.*, 134 id. 156; *H. R. T. Co.* v. *W. T. & R. Co.*, 135 id. 393; *Sprague* v. *City of Worcester*, 13 Gray, 193; *Brown* v. *C. R. R. Co.*, 12 N. Y. 486; *Pumpelly* v. *G. B. Co.*, 13 Wall. 166–180; *Eaton* v. *B., C. & M. R. R. Co.*, 51 N. H. 504; *Rutz* v. *City of St. Louis*, 7 Fed. Rep. 438; *City of Morrison* v. *Hinkson*, 87 Ill. 587; *City of Fort Worth* v. *Crawford*, 64 Tex. 202; *Darlington* v. *Mayor, etc.*, 31 N. Y. 164; *Urquhart* v. *City of Ogdensburgh*, 91 id. 67; *Wilson* v. *N. Y.*, 1 Den. 595; Dillon on Mun. Corp. §§ 1048–

1051; *Barton* v. *City of Syracuse*, 36 N. Y. 54; *Nims* v. *City of Troy*, 59 id. 500; *Drake* v. *H. R. R. R. Co.*, 7 Barb. 508.)

*B. F. Tracy* for respondent.   The pumping station, erected and maintained by the defendant upon its own land, was a nuisance, specially injurious to the houses and lots of the plaintiff adjoining and in its immediate vicinity.   Had the acts complained of been committed by a private person, his liability to the plaintiff for the injury sustained would not be doubted.   (*McKeon* v. *See*, 51 N. Y. 300.)   In such cases it is not necessary to allege and prove negligence.   (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10, 22; *Campbell* v. *Seaman*, 63 id. 568; *Heeg* v. *Licht*, 80 id. 579; *Bohan* v. *P. J. G. L. Co.*, 122 id. 23; *P. G. Co.* v. *Murphy*, 39 Penn. St. 257; *Cleveland* v. *C. G. L. Co.*, 20 N. J. Eq. 201; *O. G. L. & C. Co.* v. *Thompson*, 39 Ill. 598; Wood on Nuis. [2d ed.] § 553.)   The fact that the defendant is a municipal corporation does not relieve it from liability.   (*Noonan* v. *City of Albany*, 79 N. Y. 476; *Weet* v. *Village of Brockport*, 16 id. 172; *Byrnes* v. *City of Cohoes*, 67 id. 204; *Haskell* v. *City of New Bedford*, 108 Mass. 208; *Atty.-Gen.* v. *Leeds Corporation*, L. R. [5 Ch. App.] 583; *Bailey* v. *Mayor, etc.*, 3 Hill, 531; *Moodalay* v. *East India Co.*, 1 Brown's Ch. 469; *Griffin* v. *Mayor, etc.*, 9 N. Y. 456.)   One who pleads legislative authority for particular acts, which would otherwise be a nuisance, must show that the legislature authorized in express terms, or by clear and unquestionable implication, the doing of the very acts complained of, or that the statute was imperative and could not be executed without causing a nuisance.   (*U. S.* v. *Fisher*, 2 Cranch, 390; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10, 22; *Hill* v. *M. A. Dist.*, L. R. [4 Q. B. Div.] 433; *Truman* v. *L. & B. R. Co.*, L. R. [25 Ch. Div.] 423; *Queen* v. *B. N. Co.*, 6 B. & S. 631; *Atty.-Gen.* v. *C. H. L. Asylum*, L. R. [4 Ch. App.] 147; *Hooker* v. *N. H. & N. Co.*, 14 Conn. 146; 15 id. 312.)   The fact that the

plaintiff's dwelling houses were erected after the pumping station was in operation is immaterial. (Wood on Nuis. [2d ed.] § 520; *Com.* v. *Upton*, 6 Gray, 473; *Campbell* v. *Seaman*, 63 N. Y. 584.)

O'BRIEN, J.　The municipal authorities of the city of New York were empowered by chapter 386 of the Laws of 1878 to extend and enlarge the distribution of Croton water throughout the city, and for that purpose to raise and expend a sum of money not to exceed one million five hundred thousand dollars. The authority thus conferred is to be found in the second section of the act, which reads as follows:

" The Commissioner of Public Works of the City of New York, when thereunto authorized by three-fourths vote of all the members elected to the Common Council of said city, to be approved by the Mayor of said city, is hereby authorized to expend for materials and labor and other services in such manner as the said Commissioner shall deem for the best interest of said city, in laying pipes to extend and enlarge the distribution of Croton water throughout the City of New York, including the two new wards, and to furnish a sufficient supply thereof to the institutions in charge of the Department of Public Charities and Correction, located on Blackwell's Island, Ward's Island and Randall's Island, and in laying mains and erecting or constructing such structures and fixtures as the said Commissioner of Public Works may deem necessary to deliver said water at higher levels and in greater quantities, an additional sum not exceeding one million five hundred thousand dollars."

The common council and the commissioner of public works proceeded to execute the power conferred by this act, and erected upon certain lots owned by the city a building, in which were placed pumping engines, tank and other fixtures, and laid the necessary mains and pipes to connect the points to be served with the source of supply. The object of the improvement was to supply water at higher elevations to the portions of the city built on high ground. The pumping

station was constructed some time after the passage of the act, and in the year 1888 had been in operation some years. About this time there was erected a row of brick dwelling houses extending from the west wall of the pumping station westerly, twelve in number, which on the 13th of July, 1888, were all conveyed to the plaintiff. The three houses nearest to the station are known as Nos. 116, 118 and 120, the first having been built close to the west line of the lot upon which the structures of the city had been placed. The injury for which the plaintiff complained was that by reason of the operation of the pumps and machinery in the station, the noise and vibration therefrom greatly damaged the three houses, next adjoining, rendering them untenantable, or at least greatly diminishing the rental value. The vibration and noise affected the three houses in proportion to their proximity to the station. It is conceded by the learned counsel for the defendant that the plaintiff at the trial proved that the three houses were seriously affected by the action of the machinery in use in the pumping station, and that the vibrations and noise therefrom produced actual pecuniary loss to the plaintiff. There is no complaint of negligent management on the part of the municipal authorities, but the plaintiff's contention is that he was entitled to the use and enjoyment of the property which he owned free from such annoyance or loss. On the other hand the defendant insists that it is not liable for the results of the injury for the reason that it acted in the exercise of powers for public purposes conferred by express legislative authority. These positions assumed by the respective parties sufficiently disclose the nature of the legal question involved. The defendant's position was sustained by the trial court, and the complaint dismissed, but the General Term has reversed the judgment.

The defendant, by the exercise of the power of eminent domain, could have taken such portion of the adjoining property as would enable it to conduct its operations without damage to what remained, and the owner would then be entitled to compensation. It may be a question worthy of considera-

tion whether upon the facts disclosed the defendant's acts do not virtually amount to a taking without any compensation to the extent of the damage caused, but a consideration of this feature of the case is rendered unnecessary by recent decisions of this court which, when applied to the facts disclosed by the record, fully sustain the view taken by the learned General Term. These cases have grafted upon the principle contended for in behalf of the defendant, that legal liability in damages cannot result from acts done by a corporation in the performance of a public duty by express legislative authority, resulting in consequential injury to others, and which, as between individuals would be regarded as a nuisance, an important limitation. It is that the authority which will shelter an actual nuisance must be express or a clear and unquestionable implication from powers conferred, certain and unambiguous, and such as to show that the legislature must have intended and contemplated the doing of the very act in question. (*Hill* v. *Mayor, etc.*, 139 N. Y. 495 ; *Bohan* v. *Port Jervis Gas Light Co.*, 122 id. 18 ; *Cogswell* v. *N. Y., N. H. & Hartf. R. R. Co.*, 103 id. 10.)

The authorities cited show that this qualification of the general doctrine is founded in reason and justice, and that it is not by any means a new principle. It only remains to point out its application to this case. The legislature undoubtedly authorized the defendant to construct a building, and to place in it the necessary machinery to accomplish the purpose in view. But that is not the act complained of, or which produced the injury to the plaintiff's property. The wrong consisted in placing the building and machinery so near to the adjoining property as to injuriously affect it by the noise and vibration. The city has a right to build upon its own land, but there was nothing in the statute that required it to place the structure where it did. It could perform every duty imposed by the statute by building the pumping station at such distance from the adjoining houses as to avoid the results of which the plaintiff justly complains. If it was not possible or practicable to do that upon the land that the defendant owned,

then more could have been acquired for the purpose. The legislature did not select the place for the station, but the defendant did. A general authority to raise and expend money for the purpose of extending and enlarging the supply of water, and erecting the necessary structures and machinery for that purpose, is neither an express nor implied authority to construct a pumping station which adjoins the walls of another house or block of houses in such manner as to render them untenantable by the noise and vibration. It was entirely possible to execute the statute without invading the property rights of others. General powers for the accomplishment of a general purpose were conferred upon the defendant, but no express or implied power or authority was conferred to do the very act complained of, nor can it be said that the legislature contemplated it. It is quite likely that all the power intended to be conferred by the statute was to enable the city to raise and expend the money for the purpose indicated. Aside from this power, the city probably could, if it had the means, build the station under existing law, and without any additional legislation. But, however that may be, it cannot be said that the legislature contemplated the selection of such a place for the station that the operation of the pumps and machinery would inevitably expose private property to destruction or injury. The language of Chief Justice MARSHALL in *U. S.* v. *Fisher* (2 Cranch, 358), is applicable : " Where rights are infringed, where fundamental principles are overthrown, where the general system of the laws is departed from, the legislative intention must be expressed with irresistible clearness to induce a court of justice to suppose a design to effect such objects."

It is plain, we think, that the specific act of the defendant which resulted in the injury, is not within the express words of the statute, or any necessary implication.

The order appealed from, should, therefore, be affirmed, and judgment absolute ordered for the plaintiff, with costs.

All concur.

Order affirmed, and judgment accordingly.