GEORGE H. SPRING, Respondent, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant.

*Right of a railroad corporation to maintain a private nuisance — express statutory authority to do the precise act must be shown.*

The statutory authority which will sanction the infliction by a railroad corporation of an injury to private property, without the consent of the owner, or the making of compensation to him therefor, must be express, or must be given by clear implication from the powers expressly conferred, so that it can fairly be said that the Legislature contemplated the doing of the very act which caused the injury.

A railroad corporation has a right to acquire land by purchase for the accommodation of its business, but it must secure such a location as will enable it to conduct its operations without violating the rights of others.

In an action brought to restrain the defendant, a railroad corporation, from using a large coal pocket opposite the plaintiff's premises and to recover damages caused thereby to the rental value of such premises, it appeared that the structure was distant about fifty-seven feet from the plaintiff's premises; that it was the largest kind in use, and that from sixty to seventy engines were coaled there every day with hard and soft coal; that it was near a closely populated section of a city, and that the filling of the bins and the coaling of the engines produced gases, smoke, soot and coal dust which settled upon the plaintiff's premises and damaged furniture and clothing. The defendant was a foreign corporation and operated its road as lessee of a railroad corporation incorporated under the laws of the State of New York.

Upon an appeal from a judgment entered upon the report of a referee who found that the structure in question constituted a private nuisance as to the plaintiff, *Held*, that the franchise under which the corporation operated the road gave it no express right to maintain this structure, and that the facts justified the conclusion of the referee.

APPEAL by the defendant, The Delaware, Lackawanna and Western Railroad Company, from a judgment of the Supreme

Court in favor of the plaintiff, entered in the office of the clerk of the county of Chemung on the 10th day of September, 1894, upon the report of a referee.

*Robert T. Turner*, for the appellant.

*Judson A. Gibson*, for the respondent.

MERWIN, J. :

The plaintiff in the year 1890 was and still is the owner and in possession of a lot, with three dwelling houses thereon, on the east side of Baldwin street in the city of Elmira. About December 1, 1890, the defendant, who as owner or lessee operated a railroad that passes through the city of Elmira, erected upon premises owned or leased and occupied by it in the city of Elmira and situate opposite to and about fifty-seven feet distant from the plaintiff's premises, coal bins or pockets for the use of its road and has ever since maintained and used them. It is found that the structure containing the coal bins or pockets is of the largest kind used by trunk line railroads in the State for such purposes ; is 650 feet long, including the incline trestle leading thereto, and contains nine pockets, and is in constant use by defendant for storing hard and soft coal in the bins and coaling its engines therefrom to the number of sixty or seventy engines per day; that the structure is within 300 or 350 feet from a very closely populated portion of the city of Elmira, and the premises on which the structure is situated are immediately opposite a portion of the city which has been all laid out into city streets, blocks and building lots suitable for dwelling houses; that for the purpose of supplying the coal bins with coal, locomotive engines of the defendant using soft or bituminous coal draw cars heavily loaded with soft and hard coal up the steep incline leading from the railroad tracks into the bins, into which bins or pockets the contents of the cars are thrown ; that now and ever since the erection of the structure, there necessarily is being and has been emitted from defendant's engines, using the bins, hurtful and offensive gases, sparks, smoke, soot and cinders, and from the coal taken from and put in the bins, coal dust and dirt; that the gases, sparks, smoke, soot, cinders, coal dust and dirt, have been and are being borne by the wind upon and settle down upon and into the dwelling

house of the plaintiff, injuring the furniture and clothing therein, rendering the same unwholesome, uncomfortable and unsuitable as a habitation; that on account of such gases, sparks, smoke, soot, cinders, coal dust and dirt, coming upon and into the premises of plaintiff, the plaintiff has suffered irreparable injury and the rental value of the premises has been reduced from thirty-one dollars per month to twenty dollars per month; that the injuries to plaintiff's premises are of constant repetition and will be necessarily continued so long as the structure of defendant shall remain and be used as at present; that on account of the continuous character of such injuries, plaintiff has no adequate redress by actions at law, and that a resort to such actions would lead to a multiplicity of suits.

As conclusions of law it was found:

*First.* That the structure of defendant mentioned in the complaint, consisting of coal bins or pockets and trestle as at present used, is a private nuisance to plaintiff.

*Second.* That the defendant, its officers, agents and servants, should be perpetually restrained and enjoined from depositing in and taking from said structure coal in such manner as to set afloat in the air and cast or deposit upon or into the premises of the plaintiff, smoke, soot, cinders, sparks, dust or dirt.

Judgment was accordingly ordered, together with the damages for the loss of rental value of the premises from December 1, 1890, to September 1, 1894, to the amount of $500.

The referee, in effect, finds that the defendant had erected and was maintaining a structure which, as used by it, constituted a private nuisance to the property of the plaintiff. The evidence is, we think, sufficient to sustain the conclusion. But the defendant claims that the right to erect and use this structure in coaling its engines is necessarily and materially incident to the operation of defendant's railroad, and, therefore, embraced within its franchise, and is not a nuisance, although it may operate as such, and that the plaintiff has no remedy.

The case of *Cogswell* v. *N. Y., N. H. & H. R. R. Co.* (103 N. Y. 10) seems to be somewhat in point against that proposition. In that case the defendant erected upon a lot adjoining a dwelling house owned by plaintiff an engine house and coal bins for its road, and used the same in operating it, with results to the adjoining

property quite similar to those in the present case. It was held that the engine house as used was a nuisance; that legislative authority to run its trains over the railroad was not a legislative sanction to the committing of such a nuisance; that an action was maintainable to recover damages and to restrain the nuisance, and that in such action it was no defense that it was necessary for defendant to have its engine house located where it was, or that in the management thereof it exercised all practicable care. It is said that "the statutory sanction which will justify an injury to private property must be express, or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the legislature contemplated the doing of the very act which occasioned the injury." "It may have the right, which it claims, to acquire land by purchase for the accommodation of its business, but it must secure such a location as will enable it to conduct its operations without violating the just rights of others."

The defendant in the present case is a foreign corporation, and operates and uses the road and structures in question as lessee of the New York, Lackawanna and Western Railway Company, a corporation organized under the provisions of chapter 140 of the Laws of the State of New York, passed April 2, 1850, and the laws amendatory thereof. No special legislative sanction is shown for the structure in question. Prior to its erection in 1890, the defendant used a similar structure, though not so large or convenient, that was located in a place a considerable distance from the plaintiff, and its use did not interfere with the use of plaintiff's property. The defendant or its lessor had other lands where the new structure might have been placed, though not so convenient.

The doctrine of the *Cogswell* case was approved in *Bohan* v. *Port Jervis Gas Light Co.* (122 N. Y. 27); *Hill* v. *Mayor, etc.* (139 id. 502); *Morton* v. *Mayor, etc.* (140 id. 212); and so it was in *Booth* v. *R., W. & O. T. R. R. Co.* (140 id. 267, 272), cited on the part of the defendant. In the *Booth* case a distinction is pointed out between acts and uses of property which are permanent and continuous, and temporary acts resorted to in adapting premises to some lawful use. The question there considered related to the latter class of acts. In *Flinn* v. *N. Y. C. & H. R. R. R. Co.* (142 N. Y. 11) the *Cogswell*

case was not questioned, and the issue was unlike the one there and here involved. In *Pettit* v. *N. Y. C. & H. R. R. R. Co.* (80 Hun, 86) it seems to have been held that the evidence was not sufficient to show that the structure complained of and its use was a nuisance, so that the doctrine of the *Morton* (140 N. Y. 207) and kindred cases did not apply.

The principle of the *Cogswell* case should, we think, be applied to the present case. No point is made by the defendant as to the amount of the damages awarded.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed, with costs.