(25 App. Div. 321.)

### DAVIS et al. v. NIAGARA FALLS TOWER CO.

(Supreme Court, Appellate Division, Fourth Department.　February 6, 1898.)

NUISANCE—WHAT CONSTITUTES.
　　Defendant constructed a tower 200 feet above, and 10 feet distant from the nearest point to, plaintiff's building, which was used as a museum, and on several occasions in the winters the spray of waterfalls near by accumulated on the tower, in the shape of ice, and fell on the roof and skylight of the museum, breaking the glass, and causing damage inside the building, and endangering the lives of the occupants and visitors therein.　Defendant refused to take any steps to prevent the injuries to plaintiff.　*Held*, that the structure was a private nuisance, which plaintiff could have enjoined.

Appeal from special term, Erie county.

Action by Charles Davis and others against the Niagara Falls Tower Company.　From a judgment dismissing plaintiffs' complaint, they appeal.　Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John G. Milburn, for appellants.
J. H. Metcalf, for respondent.

HARDIN, P. J.　This action was commenced March 14, 1896.　The relief sought therein was a mandatory injunction, enjoining and restraining the defendant from maintaining upon its premises a certain tower, so that ice would accumulate thereon, and fall from it on the building of the plaintiffs, as well as for damages.　The defense was substantially a general denial.　The action was tried at the Erie special term in January, 1897.　Since 1888 the plaintiffs have been co-partners in business at the city of Niagara Falls.　At all such times they were the owners and occupants of a parcel of land situate on the west side of Riverway, in the above-named city, and upon that lot is situated a four-story brick and stone building, used and occupied by plaintiffs for the purpose of conducting a museum of various curiosities for exhibition to

tourists and visitors to the Falls of Niagara; an admission fee being charged by the plaintiffs therefor. Plaintiffs erected the building in or about the year 1888, at a cost of $45,000. It is 63 feet wide, 120 feet deep, and 50 feet high. The interior thereof, used for such museum, is an open court from the top thereof, and from the skylight which forms the roof to the ground floor of the building. Around the court, upon the four floors or galleries of the building, the exhibits are arranged in glass-covered cases, against or near the walls. Upon the ground floor, immediately in the center of the court, is located a large glass case, containing some of the more valuable exhibits of plaintiffs. Immediately over the court, and lighting the building, is a skylight, 35 feet wide, 81 feet long, running to a cone, slanting to the north and south, and containing several hundred panes of heavy glass, one-quarter of an inch thick, each 18 inches wide by 63 inches long, and subdivisions of such panes. The skylight was erected at the same time as the building, and at a great cost, for the purpose of affording proper light and protection to the building, and the building and museum have been maintained in substantially the same condition at all times since the erection of the said building. The business is a source of profit to the plaintiffs, who have derived their livelihood from the same during such period. Plaintiffs and their employés, three in number, are necessarily engaged upon the floor thereof, under the skylight. The museum is visited by patrons and customers in the winter as well as in the summer time. About 1893 the defendant purchased the lot immediately south of the premises occupied by plaintiffs, and erected an hotel and tower, which it has since and now maintains. The tower was completed in the autumn of 1893, is constructed of open ironwork, consists of uninclosed iron beams running from near the ground to a cone, and extends at varying distances from plaintiffs' building about 200 feet above the roof of the same, which is about the height of defendant's hotel. Within the tower are two elevators, used for carrying passengers to the top thereof for the purpose of viewing the scenery about Niagara Falls. This hotel is located within two feet of plaintiffs' building. The legs of the tower at the top of the hotel constitute four corners of a square, 50 feet apart at the base, 30 feet at the top, and at the top of the hotel building the two most northerly legs of the tower are 10 feet from the southerly edge of plaintiffs' building. All the structures in question are situate near and opposite Prospect Park, adjoining the falls, and within a few hundred feet of the same; and, on many occasions during each winter since the tower has been constructed, ice has formed thereon, from sleet, melting snow, or spray from the falls, which has frozen upon the tower; and at all times during each winter when ice had so accumulated on the tower, and a thaw has occurred, large quantities of ice from the tower have fallen and been blown upon the plaintiffs' building; and the ice which has so fallen and been blown from the tower has on several occasions, suddenly and without warning, during the winters of 1894–95 and 1895–96, fallen upon the skylight of plaintiffs' building, and, breaking through the glass therein, has fallen with great force to the floor of the building. Such falling ice has been of sufficient thickness to produce serious damage to plaintiffs' property, to endanger human life, and has

carried with it pieces of glass which have in like manner injured the floor of, and the cases and the contents within, plaintiffs' building; and such ice and pieces of glass have been of sufficient size, on various occasions, to injure, maim, or kill persons, if they had happened to fall upon them. Such falling ice has so injured the skylight as to allow rain and melting snow to run through the same upon plaintiffs' exhibits, to the injury of plaintiffs' building and its contents. The skylight and the tin roof surrounding the same on plaintiffs' building have been damaged and injured on several occasions through such falling ice, and such injury has been aggravated through the impossibility of properly repairing the roof during the winter season. Such ice falls and is blown from the tower more particularly at time of thawing, when the prevalent wind is from the tower towards plaintiffs' building. The floor of said building, upon which such ice and broken glass falls when ice breaks through the skylight, is the place where the plaintiffs and their employés are engaged in performing their duties, and where visitors to the museum view and inspect the collections. At all times during every winter season ice is liable to accumulate upon the tower, and when there is a thaw large quantities thereof are liable to fall and be blown from the tower upon plaintiffs' building; doing damage to their property, and involving a risk to human life. The injuries to plaintiffs' building will probably recur each winter during the periods of thaw, when ice has formed and accumulated on said tower; and, by reason of the weather conditions which prevail at Niagara Falls, such forming and accumulating of ice on the tower during a period of several months each winter, and such falling of ice in considerable quantities and sizes therefrom on various occasions each winter, are reasonably to be expected, and irreparable injury and damage to the plaintiffs and their property and business will probably continue, and the lives and limbs of plaintiffs, their employés and patrons, will probably continue to be in jeopardy, so long as the present conditions continue to exist. The plaintiffs have sustained damage by reason of the falling and blowing of ice from said tower upon the museum building to the amount of $2,500. The plaintiffs made formal demand of the defendant, before the commencement of this action, that it pay the said damages, and take such steps as might be necessary to protect plaintiffs' building and its contents from further injury, but the defendant has neglected and omitted so to do. The tower is used by the defendant as an observatory, and as such has acquired a wide reputation; and the defendant has derived, and is now deriving, considerable profits from its use by tourists and others. It is a safe, substantial, and suitable structure for the purposes for which it was erected and is used. The body of the tower is wholly within and upon the defendant's own premises, and the uses made of it are for gain and profit. The foregoing is a statement, substantially, of the facts as found by the justice before whom the case was tried. Exceptions were filed by the plaintiffs to several conclusions of fact stated by the trial court, and to his conclusions of law. The court found, as conclusions of law—First, that the tower erected and maintained by the defendant as hereinbefore stated is not a private nuisance; and, second, that the plaintiffs' complaint should be dismissed, with costs.

One of the plaintiffs gave evidence as follows:

"The effect of this falling ice was that the roof has always leaked ever since the tower has been built, from the ice falling on it and breaking through. I have seen the ice accumulate. The ice accumulates by the spray blowing over there on the tower, and accumulates on the legs of the tower, and cross beams, and also the feet or stairs on the outside of the elevator shaft. The ice forms on the steps and forms on the headers, and then when it thaws it falls off. The wind carries it. I have seen it carry it thirty feet,—a sheet of ice six or eight feet long and fourteen inches wide. I have seen it carried thirty feet on the other side of our building. I have seen them come down, four or five feet long, with a crash, right through our roof. Not so much from icicles as from ice forming on the iron. I have observed icicles on different parts of the tower. I have observed these flat pieces of ice form on the tower. I have also seen ice form on the tower from other sources than the spray. I saw a great deal of ice form last year from snow left there, which thawed and became ice, and I saw those sheets blow right over onto our roof. These flat pieces that formed on the legs and blew off were formed from spray and snow. Our building and that of the defendants is about 600 feet from the brink of the falls. Mist rises from the Falls of Niagara, and blows over. Whatever way the wind blows, the mist goes with it; and, if it strikes these places before it is frozen, it will stick to anything it comes in contact with, and forms ice. The frozen spray which I have described, that forms on the tower, is just the same as that which forms on the trees in the park, and constitutes what is known as the 'ice scenery' at Niagara Falls."

Other evidence was given corroborating the statement made by the plaintiff, and tending to show that by reason of the accumulation of ice upon the structure of the defendant the plaintiffs have suffered injuries, from time to time, to the extent of some $2,500, as the evidence indicates. The evidence established that the defendant refused, after notice, to take any steps by way of preventing the injuries which the plaintiffs were receiving from the structure maintained by the defendant. The evidence clearly indicates that the tower, as maintained by the defendant, is a menace to the property of the plaintiffs, and to persons visiting their museum, and that from time to time serious damage has occurred to the plaintiffs' property, and endangered the lives of persons in and upon the plaintiffs' premises. If the defendant's structure had been erected at a greater distance from the premises of the plaintiffs, the injuries now complained of by the plaintiffs would not have occurred. The evidence of the acts of the defendant in building the structure, and maintaining it in the manner in which it is maintained, quite clearly establishes that the structure is a nuisance, by reason of which the plaintiffs suffer damages. In Penruddock's Case, 5 Coke, 100b, it was said:

"A man shall have an assize of nuisance for building a house higher than his house, and so near his that the rain which falleth upon that house falleth upon the plaintiff's house."

In Radcliff's Ex'rs v. Mayor, 4 N. Y. 199, in the course of the opinion Bronson, J., said:

"And one cannot justify placing a spout on his house which throws the water on the land of his neighbor."

It is said in section 104 of Wood, Nuis. viz.:

"While a person may erect a building upon the line of his land, yet he is bound, at his peril, to do it in such a manner that the water or snow and ice from its roof shall not fall upon his neighbor's land, or even upon his own, in

such manner as to escape upon his neighbor's land in large quantities, or greater volumes than would go there if no erection had been made."

In Cogswell v. Railroad Co., 103 N. Y. 10, 8 N. E. 537, it appeared that the defendant had erected upon a lot adjoining the dwelling house owned by the plaintiff an engine house and coal bins for its road, and used the same in operating it. The smoke, soot, cinders, and coal dust caused by such use filled plaintiff's house, and rendered the air offensive and unwholesome, and the house untenantable, and it was held that the engine house, as used, was a nuisance; and Andrews, J., at page 15, 103 N. Y., and page 538, 8 N. E., in referring to the opinion of Bronson, J., in Radcliff's Ex'rs v. Mayor, supra, as to the general rule that a man may do what he will with his own property, quotes approvingly from Bronson, J., viz.:

"He may not, however, under color of enjoying his own, set up a nuisance which deprives another of the enjoyment of his property."

That case was quoted with approval in Hill v. City of New York, 139 N. Y. 502, 34 N. E. 1092, and Morton v. City of New York, 140 N. Y. 212, 35 N. E. 490.

In McKeon v. See, 51 N. Y. 300, affirming 4 Rob. (N. Y.) 449, the defendant was carrying on a manufactory in a building adjoining buildings owned by the plaintiffs. The defendant's machinery was run by steam power, and its operation produced a jarring and shaking of plaintiffs' building, to their injury, and to the annoyance of the occupants. It was held that a recovery could be had, and numerous cases were quoted in the opinion of Hunt, C., sustaining the right of recovery; and then he observed, viz.:

"These cases fully sustain the principle upon which the recovery was had in the present case. If the injury amounts to a nuisance, and a continuing one, the appropriate remedy is by a bill for an injunction;" citing Williams v. Railroad Co., 16 N. Y. 97; 2 Story, Eq. Jur. §§ 925–927.

In Dunsbach v. Hollister, 49 Hun, 352, 2 N. Y. Supp. 94, affirmed in Id., 132 N. Y. 602, 30 N. E. 1152, the defendant, a dealer in molding sand, deposited upon his own lot, adjoining that of plaintiff, a large quantity of sand. No covering was placed over this sand, and the evidence tended to show that when the wind was in a southerly direction, and especially in dry weather, the sand was blown into the plaintiff's house, to the great annoyance and discomfort of the plaintiff and family, and to the injury of her food, furniture, and property in the house. In that case it was held that the plaintiff was entitled to recover such damages as had been sustained, and to an injunction; and it was held, viz.:

"Where an injury is of such a character as to be the source of recurring personal annoyance, discomfort, and inconvenience, in addition to the damage to property, a case is presented that cannot be adequately compensated in damages, and an injunction should be granted."

In Campbell v. Seaman, 63 N. Y. 568, it was said that:

"Every person is bound to make a reasonable use of his property, so as to occasion no unnecessary damage or annoyance to his neighbor. If he makes an unreasonable, unwarrantable, or unlawful use of it, so as to produce material annoyance, inconvenience, discomfort, or hurt to his neighbor, he will be guilty of a nuisance to his neighbor, and the law will hold him responsible for the consequent damage. As to what is a reasonable use of one's own prop-

erty cannot be defined by any certain general rules, but must depend upon the circumstances of each case. A use of property in one locality, and under some circumstances, may be lawful and reasonable, which under other circumstances would be unlawful, unreasonable, and a nuisance. To constitute a nuisance, the use must be such as to produce a tangible and appreciable injury to neighboring property, or such as to render its enjoyment specially uncomfortable or inconvenient."

We think the evidence in the case in hand brought it within the principles declared in the quotation we have just made, and that the use made by the defendant is not reasonable, and that its structure, maintained with the atmospheric conditions which exist, when we consider the consequences to the plaintiffs' property, is unlawful. Bohan v. Gaslight Co., 122 N. Y. 26, 25 N. E. 246; Shipley v. Fifty Associates, 106 Mass. 194. It is obvious that the spray from Niagara Falls, if allowed to pass over the land of the plaintiff without the presence of this tower, would not produce the injury of which the plaintiffs now complain, and that it is the extraordinary structure erected by the defendant that has occasioned the large damages that have already been sustained by the plaintiffs, and others likely to occur unless some provision shall be made by the defendant to guard against the action of the elements which causes the moisture to adhere to the structure of the defendant, and form large pieces of ice, which, with the aid of the wind, are carried upon the property of the plaintiffs. It is not necessary to determine on this occasion whether such precautions and guards can be taken by the defendant as to avoid the succession of injuries such as have heretofore been sustained by the plaintiffs. That question will more appropriately be determined when it shall be presented in the trial court. The foregoing views lead us to the conclusion that a new trial should be ordered.

Judgment reversed, and a new trial ordered, with costs to the appellants, to abide the event. All concur.