(35 Misc. Rep. 664.)

### COLEMAN et al. v. CITY OF NEW YORK.

(Supreme Court, Special Term, New York County. August, 1901.)

1. NUISANCE—INJUNCTION.

A street was laid out under Laws 1887, c. 697, Laws 1888, c. 272, and Laws 1889, c. 257. These laws required an exterior street to be laid out along the East river, and forbade the erection of any wharf or street structure, except in accordance with the plan to be filed. Provision was made for a temporary wharf structure, subject to the provision that the street and the bulkhead forming the outer edge must at all times remain free for common use. *Held* not to authorize the city to maintain along the outer end of a wharf constructed by it at the foot of Eightieth street, at right angles to such Exterior street, a dumping board for rubbish, projecting beyond the bulkhead line; and owners deprived of such wharf in case they require it may restrain its maintenance as a nuisance.

2. SAME—ESTOPPEL.

Notwithstanding the fact that such owners were made parties to a proceeding by the city to take land for an exterior street, and have been assessed for benefits and awarded for burdens, they will be entitled to an injunction where the city creates a public nuisance.

Action by Maggie A. Coleman and others against the city of New York for an injunction. Injunction granted.

Louis O. Van Doren, for plaintiffs.

John Whalen, Corp. Counsel (Charles Blandy and E. J. Freedman, of counsel), for defendant.

RUSSELL, J. The plaintiffs are three separate property owners of lots lying between Avenue B and Exterior street, on East river, in the city of New York. One of the lots is bounded easterly by Exterior street, northerly by Eightieth street and westerly by Avenue B. Another is on the north line of Eightieth street, and the remaining lot adjoins the last-mentioned one. Exterior street is not graded or paved as yet, but has been partially occupied by a city dock extending westerly from the bulkhead line. In recent years the street cleaning department, acting in unison with the dock department, has maintained from the bulkhead line easterly a dump

board carried out 20 feet beyond the bulkhead line, and covering about 168 feet of the dock front. Underneath the dumping board are compartments for the sorting of rubbish which is available to the city for sale. The dump board is reached by the city carts through Eightieth street, and is used for the occupation of the carts, so that by tilting them ashes, street sweepings, and rubbish, including cans, boxes, and similar things, may be deposited in the city scows. Laborers pick over the deposits in the scows, and place those materials deemed of value in the compartments underneath the dump board, from whence they are carried away by the contractors of the refuse. Such an occupation of the river front is a serious disturbance to the valuable use of the plaintiffs' premises for any present or future purpose. The ashes and cinders sometimes float in the air with the prevalence of wind, and the refuse emits at times odors which are offensive. The river front cannot be utilized by the plaintiffs, and its practical value to them for commercial purposes is substantially destroyed. Their lots face the westerly side of Exterior street, but the public water way on the easterly side of that street is closed to them, although that water way is a navigable stream, open to public use, even though the city owns the bed of the river. There are added considerations which especially favor the position of the plaintiffs. They do not stand simply as property owners upon a public street complaining that a nuisance is maintained 135 feet away. They were the owners of land in the city of New York, part of which was taken by that city under the power of eminent domain for the public purpose of creating Exterior street, and their especial interest in its proper maintenance was recognized by the commissioners in awarding compensation and determining benefits by assessments upon them which they have paid. They have a particular interest in the maintenance of that street by reason of accessibility to the water front which springs up from its creation, and any compensation awarded to them and assessment burden imply that the equivalents of reward and taxation are based upon the uses for a public street in the land taken, bounded by the navigable water way. Hence to justify such an invasion of the rights of the private owner, the power must be expressly conferred by law, or arise by clear and unquestionable implication. Cogswell v. Railroad Co., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701. This principle was applied in the case of the erection of a pump station causing noise and vibration. Morton v. Mayor, etc., 140 N. Y. 207, 35 N. E. 490, 22 L. R. A. 241. Also in the case of the erection and use of a large coal pocket opposite plaintiff's premises. Spring v. Railroad Co., 88 Hun, 385, 34 N. Y. Supp. 810. The building by the city of a dumping station upon half of a pier owned by it was properly enjoined, not alone because of the unloading of refuse and garbage, but because of the exclusion from incidental consequence of the use of the other half by the private owner. Hill v. Mayor, etc., 139 N. Y. 495, 34 N. E. 1090. Abutting owners may legally object to a diversion of the street use from its implied purpose. Lahr v. Railway Co., 104 N. Y. 268, 10 N. E. 528; Story v. Railroad Co., 90 N. Y. 122, 43 Am. Rep. 146. In all cases of nuisance a complete remedy may be adminis-

tered by the court in equity, and even the erection of a bridge in a public street of a city enjoined. Knox v. Mayor, etc., 55 Barb. 404 (Daniels, J.).

The provisions of law under which Exterior street was designed and legalized do not carry the rights of the city beyond those which would otherwise be presumed to be their limit. The street was laid out under chapter 697, Laws 1887, and amending acts of chapter 272, Laws 1888, and chapter 257, Laws 1889. The first section requires an exterior street to be laid out, and also to be completed. The second section directs the plan to be properly made and filed, which was declared by the act to be the sole plan for bulkhead, pier, basin, dock, or slip, and forbade the erection of any wharf or street structure, except according to the plan. Provision was made in the same section that the city might build or rebuild, or license such building or rebuilding, a temporary wharf structure, to remain until the construction of the street should begin. But this provision was directly limited by section 4, which provided that the street and the bulkhead forming the outer edge should remain at all times a public exterior street or wharf for free and common use, except as otherwise provided. Nor should any structure be permitted outside the bulkhead line. There is no other provision in the act which allows the construction of a dumping plant outside of the bulkhead line. We may fairly assume that the city had the right, both before and after the commencement of the construction of Exterior street, to build or rebuild a wharf; but the placing of one within the lines of a public street must be for street purposes and public uses, except so far as temporarily the use of that street is partially closed to the public for the very purposes of its construction and in aid of the ultimate purpose of a more perfect public use. The very case, cited to me by the counsel for the city, of Mayor, etc., of City of New York v. New York Cent. & H. R. R. Co., 69 Hun, 324, 23 N. Y. Supp. 562, supports this reasoning, rather than that of the counsel. By the opinion of Presiding Justice Van Brunt it was distinctly held that a grantor who excepts a portion of land for a certain purpose cannot be held to have conveyed that excluded because he afterwards devotes it to a different purpose from that indicated in the exception. This is undoubted law, and the opinion of the presiding justice was adopted by the court of appeals. Id., 147 N. Y. 710, 42 N. E. 724. But this case does not hold that the grantee can take land in invitum for a public use, and then devote it to the creation of a nuisance, not contemplated within the purpose of the use whose necessity was the plea for the taking by legal force. The case strongly supports the theory that the implied reservation remains with the grantors of any other use than that for which they were compelled to surrender their lands. Therefore no temporary use was acquired by condemnation which is antagonistic to the permanent object for which the property was obtained, and the city cannot hold in suspense the duty of constructing the street, which it had the right to begin by the completion of the condemnation proceedings in 1897, for an unknown and indefinite time, under the plea of temporary privilege, to the destruction of private interests. It is

always well to bear in mind that the court should not substitute its power for that of the executive branch of the government, or hamper the exercise of the discretion and judgment of that executive power which often acts under the constraint of difficult practical problems; but the duty of action is always obligatory upon the court for the preservation of the rights of the citizen which are assured and protected by law.

Let injunction go against the maintenance of the dumping board, to be operative within 90 days after service of a copy of the judgment, with costs to the plaintiffs.

Ordered accordingly.