The Delaware, Lackawanna and Western Railroad Company, Appellant, *v.* The City of Buffalo and Henry Quinn, Respondents. *

1. Municipal Corporations — Removal of Railroad Bridge Abutments as Obstruction to Street. In an action by a railroad company to enjoin a city and its street commissioner from forcibly removing, in compliance with a resolution of the common council, abutments in a street, constructed and maintained by the company as supports for a bridge crossing, it is of no consequence whether the direction of the common council to the street commissioner to remove the obstruction was or was not the proper method of proceeding, where nothing has been done thereunder; but the sole question is whether, upon the facts, the company has a right to maintain the structure against the decision of the governing body in the city that it is an obstruction in the street.

2. Railroads — Legislative Warrant for Occupation of Highway. When a railroad company relies upon a legislative act as a justification for the occupation of a public highway with its piers and abutments, it must show that the statute authorized in express terms or by clear and unquestionable implication the doing of the very acts complained of, or that the statute was imperative and could not be executed without causing a nuisance.

3. Absence of Authority for Obstruction of Street by Supports of Elevated Railroad Crossing. Mere general legislative authority to a railroad company to cross a city street with the consent of the local authorities, gives it no right to occupy a large portion of the street with abutments and piers for the support of its structure, to the great inconvenience and detriment of the public.

4. Municipal Authorities Cannot Surrender Street to Railroad. Municipal authorities, in the exercise of the power to permit railroads to cross streets, are not authorized to surrender to the railroad the exclusive use of a considerable portion of the street for the erection and maintenance of abutments and piers to sustain an elevated structure.

*D., L. & W. R. R. Co.* v. *City of Buffalo*, 4 App. Div. 562, affirmed.

(Argued January 24, 1899; decided February 28, 1899.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 28, 1896, affirming a judgment in favor of defendants entered upon a decision of the court dismissing the complaint on trial at a Special Equity Term.

* See opinion on denial of motion for reargument, page 478 of this volume.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John G. Milburn* for appellant.   The bridge and its abutments are, and always have been, an authorized and legal structure.   (*Conabeer* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 487; L. 1850, ch. 140, § 28; L. 1870, ch. 519, § 19; *Clarke* v. *Blackmar*, 47 N. Y. 150; *Matter of P. R. Transit Co.* v. *Dash*, 125 N. Y. 93; Pierce on Railroads, 247; *Wormser* v. *Brown*, 149 N. Y. 171; *People* v. *Kerr*, 27 N. Y. 188; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *People* v. *B. & O. R. R. Co.*, 117 N. Y. 150; *Rauenstein* v. *N. Y., L. & W. R. Co.*, 136 N. Y. 528.)   The municipal authorities having duly authorized the construction of the railroad across Main street as it was built, they may not summarily remove the pier and abutments under the power to remove encroachments.   (L. 1870, ch. 519, tit. 9, § 5; *Hoey* v. *Gilroy*, 129 N. Y. 132; *Wormser* v. *Brown*, 149 N. Y. 171; *People* v. *B. & O. R. R. Co.*, 117 N. Y. 150; Pierce on Railroads, 247; *Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Clarke* v. *Blackmar*, 47 N. Y. 150; Dillon on Mun. Corp. [4th ed.] §§ 832, 836.)   The provision of the Railroad Act requiring the company to restore the street to its former state, or to such state as not unnecessarily to have impaired its usefulness, has no reference to the crossing of a street in a city, the manner of which has been prescribed by the proper municipal authorities.   (L. 1850, ch. 140, § 28.)   Even if the bridge now unnecessarily impairs the usefulness of the street within the meaning of the Railroad Act, it is not a proper remedy for that breach of duty under the act for the city to summarily tear it down under the power in the charter to remove encroachments in streets.   (L. 1850, ch. 140, § 28; *R. R. Co.* v. *City of Elgin*, 91 Ill. 251; L. 1888, ch. 345; *People ex rel.* v. *D. & C. R. R. Co.*, 58 N. Y. 152; *People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 302; *People* v. *N. Y., N. H. & H. R. R. Co.*, 89 N. Y. 266; *Post* v. *W. S. R. R. Co.*, 123 N. Y. 580; *Bryant* v. *Town of Randolph*, 133 N. Y. 77.)   The grant as to this

crossing of Main street with the crossing structure provided, was not revoked, and was irrevocable. (*Mayor* v. *T. & L. R. R. Co.*, 49 N. Y. 657; *People* v. *O'Brien*, 111 N. Y. 1; *People* v. *Sturtevant*, 9 N. Y. 263; *Davis* v. *Mayor, etc.*, 14 N. Y. 506; *Milhau* v. *Sharp*, 27 N. Y. 611; *Mayor, etc.*, v. *S. A. R. R. Co.*, 32 N. Y. 261; *S. A. R. R. Co.* v. *Kerr*, 72 N. Y. 330; *B. C. R. R. Co.* v. *B. C. R. R. Co.*, 32 Barb. 358.)

*W. H. Cuddeback* and *C. V. Nellany* for respondents. The railroad company failed to comply with the requirements of the statute in the construction of its crossing. (L. 1850, ch. 140, § 28; *D., L. & W. R. R. Co.* v. *City of Buffalo*, 65 Hun, 464; *Town of Windsor* v. *D. & H. C. Co.*, 92 Hun, 127; Code Civ. Pro. §§ 191, 1337; *Matter of Thompson*, 121 N. Y. 277.) The bridge constituting the crossing was an unlawful encroachment and obstruction on a public street and a nuisance, and properly removable as such by the city of Buffalo. (L. 1891, ch. 105, § 395; L. 1870, ch. 519, tit. 9, § 5; Dillon on Mun. Corp. [4th ed.] §§ 374, 659, 660, 723; *People* v. *Vanderbilt*, 26 N. Y. 287; *Cohen* v. *Mayor, etc.*, 113 N. Y. 532; *Flynn* v. *Taylor*, 127 N. Y. 596; *B. S. T. Co.* v. *City of Brooklyn*, 78 N. Y. 531; *Davis* v. *Mayor, etc.*, 14 N. Y. 524; *Cogswell* v. *N. Y. C. & H. R. R. R. Co.*, 103 N. Y. 10; *People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 304; *Callahan* v. *Gilman*, 107 N. Y. 365; *Ely* v. *Campbell*, 59 How. Pr. 333.) The common council had no power to permit or authorize this obstruction in a public street. (*Cohen* v. *Mayor, etc.*, 113 N. Y. 532; L. 1850, ch. 140, § 28; *People* v. *Cunningham*, 1 Den. 524; L. 1870, ch. 519, tit. 3, § 19; *Driggs* v. *Phillips*, 103 N. Y. 77; *Rauenstein* v. *N. Y., L. & W. R. Co.*, 136 N. Y. 528; *Matter of P. R. Transit Co.* v. *Dash*, 125 N. Y. 93; *People* v. *N. Y., N. H. & H. R. R. Co.*, 89 N. Y. 266; *People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 302; *Cott* v. *L. R. R. Co.*, 36 N. Y. 214; *Cooke* v. *B. & L. R. R. Co.*, 135 Mass. 185.) The resolution of the common council of October 10, 1881, "to cross with its tracks Main

street," was rescinded by subsequent action of the common council. (Dillon on Mun. Corp. [4th ed.] § 314; *Hoey* v. *Gilroy*, 129 N. Y. 132.)

O'Brien, J.    About the year 1882, the plaintiff, a railroad corporation, constructed its railway across Main street in the city of Buffalo, at an elevation of twelve feet above the surface of the street. The structure rests upon abutments and piers, all placed in the street, which at that point is ninety-nine feet in width. The abutments and piers to support the structure occupy about one-half of the width of the street. On the 26th of May, 1890, the common council of the city passed a resolution directing the street commissioner to notify the plaintiff to remove the abutments within ninety days, and if not complied with within that time, then that the commissioner remove the same and charge the expense to the plaintiff. This resolution having been approved by the mayor, the commissioner notified the company to remove the abutments within ninety days, and threatened if it was not done within that time to forcibly remove them. The plaintiff brought this action to procure a perpetual injunction against the city and the commissioner enjoining and restraining them from in any way interfering with the bridge or its abutments. It is alleged in the complaint that the structure was erected by the plaintiff under and in pursuance of legislative and municipal authority, and that it is a lawful structure in all respects which the plaintiff has a right to maintain. These allegations are all put in issue by the answer. On the trial the plaintiff's complaint was dismissed. The trial court made findings of fact and law, in which all facts with respect to the circumstances under which the structure was erected, are fully stated. It was found, among other things, that the pier, abutment and earth embankment in the street are obstructions to public travel that materially delay and inconvenience the public in the use of the street; that the plaintiff in erecting the structure did not restore the street intersected by it to its former state or to such state as not to have unnecessarily impaired its

usefulness, and that the street has been and is impaired by the existence therein of the pier, abutment and embankment of earth ; that the city has power under its charter to remove obstructions from the streets and to prevent encroachments thereon, and that the street commissioner, who has been made a defendant, is charged with the duty of removing such obstructions under the direction of the common council. From the judgment entered upon this decision the plaintiff appealed to the Appellate Division where it was affirmed.

It appears that on the 10th of October, 1881, the common council of the city, upon the written petition of the plaintiff, granted permission to it to construct its railroad through the city and to cross with its tracks several streets, including Main street ; the crossing at that street " to be by bridge, leaving a clear roadway underneath at least twelve feet in height and twenty-eight feet in clear, and subject to the approval of the city engineer." The plaintiff, upon the passage of this resolution, and without presenting to the common council or the engineer any plan of the proposed work, was proceeding in the construction so that the same would be twenty-eight feet in width in the clear and at least twelve feet in height, both of the abutments being located in the street. The common council then passed a resolution directing the plaintiff to put a span of at least sixty-six feet at the crossing, and notified the plaintiff to that effect. This resolution was passed, and notice given upon the advice of the city engineer. On the 16th of January, 1882, the common council passed another resolution, in which it was stated that through an oversight on the part of that body, or of some of its members, a grant had been given to the plaintiff to cross Main street in such a way as to do great injustice to the citizens in that vicinity and to the community at large ; and it was then resolved that the council would not receive, entertain or act upon any petitions or requests of the plaintiff until its agents should pledge themselves to cross Main street with a bridge having a span of the full width of the street. It does not appear that the common council ever gave its assent in any other way to the construction of the bridge

in question.   But the trial court found that in the month of December, 1881, while the plaintiff was proceeding with the construction of the crossing, there was a conference between the city engineer, the street committee of the common council and various officers of the plaintiff, in which it was agreed that the plaintiff should modify its plans for such crossing so that the same should be constructed as it was afterwards actually constructed, and that the plaintiff proceeded to construct the crossing in accordance with the plans as so modified, with the approval of the city engineer.   It does not appear that this approval was in writing, or that any specific plan was ever made or filed with the city, of which the engineer formally approved.

It is urged by the learned counsel for the plaintiff that the city authorities have no right to forcibly remove this structure over the street.   That depends upon the question whether it was or was not an encroachment upon the public right and an obstruction.   If it was, the city had the right to remove it. If, by the increase of population or the increase in the public travel, the street had become dangerous, in consequence of the existence of the abutments and piers, the city would be clearly liable for any damages which persons, in the lawful use of the highway, sustained by accidents due to the presence of such obstructions in the street.   It is quite true that the city author- ities would act at their peril in interfering with the plaintiff's property, and this summary method of removing the obstruc- tion could be justified only by proof in a court of justice, when the authorities were called upon to defend their act, that the structure was in fact such an obstruction in the street as they were authorized to remove.   The legislature had con- ferred upon the city authorities the power to summarily abate a nuisance or remove an obstruction from the highway when existing, and in any suit against them by the plaintiff for their acts they could justify only by showing that the nuisance or obstruction in fact existed.   (*People ex rel. Copcutt* v. *Bd. of Health,* 140 N. Y. 1.)   But the city authorities did not attempt to tear down this bridge and it has not been torn down.   The

plaintiff continues to maintain it under the injunction order which it procured at the time of the commencement of the action.   All the city authorities did was to force the plaintiff to commence this action instead of commencing a like action themselves.   It is of no consequence now whether the direction of the common council to the street commissioner to remove the obstruction was or was not the proper method of proceeding.   The parties are now in court and the sole question is whether upon the conceded facts the plaintiff has a right to maintain this structure against the decision of the governing body in the city that it is an obstruction in the street.

The learned counsel for the plaintiff contends that since the structure has the sanction of legislative and municipal authority it cannot in law be an obstruction or a nuisance which the common council may remove.   The assertion that *this* bridge has the sanction of legislative authority is not quite correct. It is true that railroad companies are authorized to construct their roads across, along or upon any street or highway in a city with the assent of the municipal authorities.   That is simply a general authority to cross streets with the consent of the local authorities.   When a railroad company relies upon a legislative act as a justification for an encroachment upon public or private rights, or, as in this case, as a justification for the occupation with its piers and abutments of a public highway, it must show that the statute authorized in express terms or by clear and unquestionable implication the doing of the very acts complained of, or that the statute was imperative and could not be executed without causing a nuisance.   The plaintiff had general legislative authority to cross the street in question, but it had no express authority to occupy a large portion of the public highway with abutments and piers for the support of its structure to the great inconvenience and detriment of the public.   Nothing less than express authority to place these obstructions in the street will shelter the plaintiff from the consequences of creating a nuisance by the obstruction of a public highway.   (*Hill* v. *Mayor, etc.,* 139

N. Y. 495; *Bohan* v. *Port Jervis Gas Light Co.*, 122 N. Y. 18; *Cogswell* v. *N. Y., New Haven & Hartford R. R. Co.*, 103 N. Y. 10; *Morton* v. *Mayor, etc.*, 140 N. Y. 212; *Hill* v. *Managers of Met. Asylum District*, L. R. [40 Q. B. Div.] 433; *S. C.* on appeal, 6 App. Cas. 193; *Truman* v. *London, Brighton & S. C. R'way Co.*, L. R. [25 Ch. Div.] 423.) So the contention that a statute general and permissive in its terms justifies the plaintiff in maintaining the particular structure in question against the will of the city authorities cannot be sustained.

It is equally clear that the plaintiff cannot justify the occupation of the street upon the ground that the municipal authorities originally consented to the erection of the structure. The common council of the city has no power to surrender a public street to the use of a railroad corporation. All it had the power to do was to consent to the crossing, and the same law which authorized a consent imposed a duty upon the company to restore the street to its former state or to such state as not to have unnecessarily impaired its usefulness. It had no more power to surrender half of the street to the use of the plaintiff than it had to surrender the whole of it. Permission to cross this street by means of an elevated structure was not a permission to occupy the roadbed or a great portion of it with solid structures that interfered materially with the use of the highway by the traveling public. (*Davis* v. *Mayor, etc.*, 14 N. Y. 506; *Cohen* v. *Mayor, etc.*, 113 N. Y. 532.) Indeed, the common council, as before remarked, never assented to the erection of this particular structure, as will be seen from the resolutions passed during its construction and which have already been referred to. The last resolution which the common council passed on the subject was in the nature of a protest against the erection of the structure in the manner that it now exists and is maintained. Whatever consent the plaintiff ever had for the erection of the structure was derived from the city engineer and the committee of the common council. That seems to have been a verbal arrangement between the officers of the plaintiff, the committee of the common council and the city engineer, which was never reduced to writing or

35

made a matter of record. Such an arrangement could not bind the city to permit the plaintiff to use the street in question for private purposes. Much less can it be said that such an arrangement could bind the city authorities in the future, when by the increase of population or for any other reason the piers and abutments became obstructions, interfering materially with the rights of the public. It is quite sufficient to say, therefore, that the municipal authorities in the exercise of the power to permit railroads to cross streets are not authorized to surrender to the railroad the exclusive use of a considerable portion of the street for the erection and maintenance of abutments and piers to sustain an elevated structure.

Moreover, when the proceedings of the common council are all read together they are not open to the construction put upon them by the learned counsel for the plaintiff. It is quite plain, I think, that the governing body in the city never gave its consent to the erection of the particular structure now complained of. It follows that the plaintiff was not entitled to maintain this action, and that the complaint was properly dismissed.

The judgment should, therefore, be affirmed, with costs.

All concur, except BARTLETT, J., not voting.

Judgment affirmed.