cution. Hassan v. City of Rochester, 67 N. Y. 528. Without discussion of the further grounds relied upon by the learned and able counsel for the corporation in their exhaustive brief, I have concluded, for the reasons stated, that the statute is not to be construed as an exemption. When we leave the generic sense of the term, we regard a tax as a burden. It is an individual contribution to governmental needs, and the return is in the existence of the government which it supports. But that kind of tax classified as a special assessment or a local assessment is not regarded as a contribution levied for the needs of government, and indirectly compensated for by the existence of that government, but as an exaction of an equivalent from the particular property upon which a direct and special benefit has been conferred. Upon the general principle, in addition to the cases cited, see In re Mayor, etc., of City of New York, 11 Johns. 77; Trustees of Illinois & M. Canal v. City of Chicago, 12 Ill. 406; Northern Liberties v. St. John's Church, 13 Pa. 104; Mayor, etc., of City of Baltimore v. Proprietors of Green Mount Cemetery, 7 Md. 517; Lefevre v. Mayor, etc., 2 Mich. 588; City of Paterson v. Society for Establishing Useful Manufactures, 24 N. J. Law, 385. An altruistic policy may well relieve from a burden, and yet at the same time refuse to remit the equivalent exacted for a benefit conferred by the public purse. It may consistently relieve from contribution to the revenue required for government, but refuse a donation from that revenue. I think that this is the meed and measure of the legislative relief afforded by the statute that we now consider.

The judgment must be affirmed, but, under the circumstances, without costs of this appeal to either party. All concur.

---

(66 App. Div. 207.)

### McKINNEY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

RAILROADS—HIGHWAYS—STATUTORY DUTY.

> Laws 1890, c. 565, § 11, requires railroad companies to restore a highway at a crossing to such condition as not unnecessarily to impair its usefulness. A railroad company crossed a highway, not a main thoroughfare, and between the rails placed planks 11 to 12 feet long; the spaces between them being filled with cinders. The highway on either side of the crossing was practically level. While plaintiff was driving over the crossing the horse was frightened and shied, and her sleigh was upset. *Held*, that the fact that the plank was not wide enough to admit the contingency of a horse shying on such crossing did not show negligence authorizing the submission of the question of defendant's negligence in the construction of the crossing to the jury.

Appeal from trial term, Oswego county.

Action by Nettie L. McKinney against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

The plaintiff brings this action to recover damages for personal injuries sustained by her while traveling upon the public highway and over the tracks of the defendant at or near the village of Richland, in the county of Oswego, on the 9th day of February, 1900. The defendant's road runs nearly north and south at the village of Richland, connecting with a branch running in a

westerly direction to the village of Pulaski. The plaintiff, who is a married woman, resides at Orwell, about two miles east of Richland. On the day of the accident she drove with a horse and cutter to Pulaski, which is about four miles west of Richland, to get her daughter, who was attending school at the former place. The day was clear and cold, and there was enough snow upon the ground to make fairly good sleighing. Mrs. McKinney left Pulaski with her daughter at about 5 o'clock in the afternoon, and reached Richland soon after 6. She drove along the main road, which is known as the "Pulaski Road," until she reached the defendant's tracks, which she found obstructed by a freight train to which an engine was attached at the south end. After waiting some five minutes for the train to move on, she turned about and drove back a few rods to a road running north and south, and thence to another crossing, which was about 300 feet north of the Pulaski road. Upon reaching this crossing she discovered that the caboose of the freight train was standing close to the south line of the highway, and again she waited about five minutes for the train to move on, but, becoming tired of waiting, she finally started to drive over the tracks. Her horse was a gentle one, and more or less accustomed to the cars, but as she drove upon the tracks the freight train started up with such a noise that the horse became frightened and shied towards the north, the cutter tipped over, and both Mrs. McKinney and her daughter were thrown out; the former receiving the injuries complained of, and which, as the evidence tended to show, quite seriously impaired her eyesight and hearing. At the close of the plaintiff's evidence the defendant moved for a nonsuit, which was denied, and at the conclusion of the entire case the motion was renewed, with the same result. To the ruling of the trial court in this respect exceptions were duly taken, as was also the case with regard to the submission to the jury of the question of the defendant's negligence. The jury rendered a verdict in the plaintiff's favor for $2,800, and from the judgment entered thereon, as well as from the order denying the defendant's motion for a new trial upon the minutes of the court, this appeal is brought.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Henry Purcell, for appellant.
N. B. Smith, for respondent.

ADAMS, P. J. The only ground upon which the plaintiff's recovery can be permitted to stand, if at all, is that the defendant was negligent in the performance of the duty which the law imposes upon it, as well as upon all the railroads similarly constructed,— of making its highway crossings reasonably safe, so that travelers thereon will not be subjected to any unnecessary inconvenience or hazard. This duty is one which is founded not only upon common-law principles, but it is likewise one which is expressly imposed by statute (Laws 1890, c. 565, § 11), and it is a continuing duty. In other words, every railroad company which carries its tracks over or along a public highway is required to restore and maintain the highway and the approaches to the crossing in such a safe condition that a traveler exercising ordinary care may pass over the same in safety. Gale v. Railroad Co., 76 N. Y. 594; Allen v. Railway Co., 151 N. Y. 434, 45 N. E. 845. Obviously, therefore, in the case before us, it becomes important to examine the facts, concerning which there is fortunately but little controversy, in order to determine how far they sustain the plaintiff's contention that the defendant has neglected its duty in respect of this particular crossing. The highway, which is known as "Crossing No. 367," is 50 feet in width,

and there are three tracks and a branch of the defendant's road which intersect and cross it nearly at right angles; the distance between the outer east rail and the outer west rail being 33.2 feet. Between these rails, and in very close proximity to the north line of the highway, are placed 15 planks. These planks are from 11 to 12 feet in length, 8 inches in width, and from 4 to 4½ inches in thickness. One is spiked down on either side of each rail, and·the intervals between the planks are filled with cinders and gravel, which reach nearly to the surface of the planks. This filling extends to within a foot of each end of the planks, so that the level roadway is from 9 to 10 feet in width. At the north end the drop from the planks to the surface.of the ground is nearly 6 inches, and there are also some depressions, which have been caused by the operation of the elements, which add somewhat to the unevenness of the surface of the road. There is no claim but that these planks were in good condition at the time of the accident, nor is it pretended that the approaches to the crossing were in any sense dangerous or inadequate. Indeed, it seems to be conceded that the highway upon either side of the crossing was practically level, and that there was sufficient room for teams to pass or turn around. The case therefore resolves itself into this single proposition: Did the provision which the defendant made for the crossing of its tracks satisfy the requirements of the statute? It is to be observed that a railroad company, in carrying its tracks across a public highway, is not required to literally restore the highway to its former condition, for that would be an impossibility. No railroad can cross a highway at a grade without impairing its usefulness to some extent, and augmenting the dangers and annoyances to be encountered by the traveling public. What is required of it, however, is that it shall make such restoration of the highway as will not unnecessarily impair its usefulness, and shall take such reasonable precautions as are proper to make the crossing safe with reference to its new surroundings and circumstances (Allen v. Railway Co., supra); and this, we think it may be said, as matter of law, was precisely what the defendant has done. The highway in question was not a main thoroughfare, although some of the plaintiff's witnesses testified that they had seen as many as 50 or 75 teams pass over it in a day; but the Pulaski road was the one ordinarily traveled by people who had occasion to drive from Pulaski to Orwell, and this highway, known as "Crossing No. 367," which was less than 400 feet in length, was supplementary or auxiliary to the principal crossing. Richland was not an incorporated village. On the contrary, it was but a mere hamlet, with a population of about 250 souls. The crossing had existed in the condition in which it was on the day of the accident for a considerable period of time. The plaintiff was entirely familiar with it, having frequently driven over it without difficulty; and, with a single exception, it does not appear that an accident had ever before occurred which was in any wise attributable to the insufficiency or insecurity of the crossing itself. Indeed, it may be asserted with entire confidence that the plaintiff would have experienced no difficulty in passing over the defendant's tracks upon the night in ques-

tion, had not her horse taken fright and shied to the north. Such a contingency as this is exceptional in its nature, and one which we do not think a railroad company is required to guard against; and to allow a jury to say that a plank crossing which was of sufficient width, and in all other respects adequate and safe for the ordinary uses to which this highway was put, should have been a foot or two wider, in order to have furnished frightened horses an opportunity to shy and plunge, would impose upon railroad companies a degree of care and foresight beyond that which we believe can be reasonably required of them. For these reasons, we think it was error, in the trial court to submit the question of the defendant's negligence to the jury, and that such error requires a reversal of the judgment and order appealed from.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.