## CITY MAGISTRATE'S COURT—CITY OF NEW YORK.

### May 19, 1911.

## THE PEOPLE v. BARNEY COMINSKY, et al.

(1.) OBSTRUCTION OF STREETS BY STANDS OF VANS AND HORSES—ORDI-
NANCE CITY OF NEW YORK, CHAP. 12, SEC. 446.

The streets and avenues of New York are highways, the use and
maintenance of which the legislative bodies in the City or state
may regulate by law or ordinance.

(2.) SAME.

The storing of a wagon in the highway is a nuisance—the prim-
ary use of a highway is for the purpose of permitting the passing
and repassing of the public, and it is entitled to the unobstructed
and uninterrupted use of the entire width of the highway for that
purpose.

JOHN J. FRESCHI, City Magistrate.

The averment in the complaint charges the defendants with
unlawfully obstructing and incumbering a public highway, to
wit; Ludlow Street near Delancey Street, New York City, by
placing their horses attached to vans at the curb therein and
obstructing traffic thereby, all in violation of Chapter 12, Sec.
446, of the City of New York.

Upon the arraignment of these defendants they were fully
apprised of the nature of the complaint charged against them,
and each was advised that a reasonable adjournment would be
granted to enable him to procure counsel or witnesses, but de-
fendants demanded an immediate trial.

The evidence adduced in behalf of the prosecution that
seems to have sustained the burden of proof by credible testi-
mony, established that these defendants kept and maintained
in the public highway and at the curb opposite the premises

No. 108, Ludlow Street in the City and County of New York, what is popularly known as a stand for the keeping of horses and moving vans without the permit or consent of the landlord of the premises in question or of the City authorities. The uncontradicted testimony of the landlady of said premises conclusively proved that the defendants have kept their horses and wagons in said street and in front of her premises against her expressed wishes and notwithstanding her repeated protest, for upwards of several months.

In the course of the trial the Court developed the fact that each van measured about six feet wide by fifteen feet in length and that excluding the horses, the vans themselves, standing as was proven in this case, one in front of the other occupied a space forty-five feet long by six feet wide along the curb line of Ludlow Street, at the point indicated, in the roadbed which measures about twenty-five feet from curb to curb, thereby diminishing the width of the highway to nineteen feet at that point.

The only claim alleged to have been made by the defendants when ordered to move by the police officer was that "this is a free country."

Aside from the conduct of the defendants which was disorderly and which annoyed the peace of the people in that immediate locality, the case at bar presents an interesting point that is of vital interest and which, in effect, generally concerns all those who make use of any portion of our public highways for a vehicle stand for one business or another.

The streets and avenues of this City are highways, the use and maintenance of which our legislative bodies in City or State may regulate by law or ordinance, and such exercise of these police powers have been held reasonable police regulations. Citizens are bound to comply with the direction of the legislature in a valid exercise of police powers. (*Health Dept.* v. *Trinity,* 145 N. Y. 32.)

Title to the streets of New York City are in the City. (*In re Gilbert El·R. R. Co.,* 70 N. Y. 361). See also *Willcox* v. *Richmond Light & R. Co.,* 128 N. Y. Supp. 266.

The Board of Aldermen of the City of New York in pursuance of a grant of power by the State Legislature to be found in the Charter of Greater New York, (see sec. 50, p. 44, Ed. 3rd.), which confers " power to regulate the use of the streets, and sidewalks by foot passengers, animals or vehicles," ordained as provided in an ordinance (*supra*) in 1903:

No vehicle shall stop for the purpose of taking or setting down a passenger or loading or unloading freight or for any other purpose, except in case of accident or other emergency, or when directed to stop by the police, *in such manner as to obstruct any street or crossing.*"

By the provisions of this ordinance it does not seem that the legislature has infringed on the liberty or the property rights of any person within the protection of the constitution, under the guise of the police power.

Recently, the Supreme Court, has held that ordinances affecting streets in the matter of the use by persons (ticket speculators) thereon are valid. (*Peo. ex rel. Lange* v. *Palmitter,* N. Y. Law Journal; *D. L. & W. R. R. Co.* v. *City of Buffalo,* 158 N. Y. 266; *Frank* v. *Village of Warsaw,* 198 N. Y. 463, 469. See also *Cohen, Adm.* v. *The Mayor,* 113 N. Y. 532.)

This ordinance was designed to prohibit the interference with the free and unincumbered use of public highways by the people generally as is their unquestioned and inviolate right.

It seems that to license the use of stands would be an original and independent grant in the street, which finds its equivalent in a franchise, and this would seem to be conferring a special privilege derogatory of the homely axiom " equal rights to all and special privileges to none."

M. a grocer, doing business in the City of New York, was in the habit of keeping his grocery wagon, when not in use, standing day and night in the street in front of his store under a permit to do so, granted to him by the city, for which an annual license fee was paid. When so standing the thills were raised perpendicularly and held up by strings. A passing ice-wagon struck the grocery wagon and turned it partially around, the string holding up the thills gave way, and they came down upon the sidewalk striking plaintiff's intestate, who was passing thereon causing his death. In an action to recover damages, held, that the license was issued without authority (Sec. 86, sub. 4, Chapter 410, Laws of 1882), that the storing of the wagon in the highway was a public nuisance.

Mr. Justice Peckham, writing for the Court of Appeals, in the Cohen case (*supra*) in the very opening sentence laid down the law which is applicable and governs here: He said:

" The storing of the wagon in highway was a nuisance. The primary use of a highway is for the purpose of permitting the passing and repassing of the public, and it is entitled to the unobstructed and uninterrupted use of the *entire* width of the highway for that purpose    *    *    *"

Even a show case maintained upon the street constitutes a public nuisance. (Wells v. City of Brooklyn, 9 App. Div. 61.)

The Court in the Wells case (*supra*) quotes with approval the language of Chief Justice Denio in Davis v. Mayor of New York, (14 N. Y. 506, 524) in which the Court said:

" Any permanent or habitual obstruction in a public street or highway is a indictable nuisance, although there be room enough left for carriages to pass; and it is not less so, though the thing which constitutes the obstruction is not fixed to the ground, but is capable of being and actually is removed from place to place in the street."

At the close of the case at bar one of the defendants urged

that the landlord opposite the moving van street stand had given her consent to its maintenance but this was not shown on the trial. Even though the defendants would have proven this fact, the permit or consent of the abutting owner could not be pleaded as a defense.

Again, in the Cohen case, the Court emphasizes this point at page 536 in this language.

" Familiar as the law is on this subject, it is frequently disregarded or lost sight of. Permits are granted by common councils of cities, or by other bodies, in which the power to grant them for some purposes is reposed, and they are granted for purposes in regard to which the body or board assuming to represent the city has no power whatever, and the permit confers no rights upon the party who obtains it. As was said by Lord Ellenbrough in the case of Rex v. Jones (supra) the law upon the subject is much neglected, and great advantages would arise from a strict, steady application of it. This case is a good example of its neglect. There is no well-founded claim of the existence of a power in the defendant to issue such a license. The defendant refers to sections 10 and 27 of Chapter 27 of the ordinances of 1859. The former provides for an assignment by the mayor of a stand where the owner of a duly licensed public cart may let it remain waiting to be employed, and also a stand where it may remain at other times upon certain terms, etc. The latter section refers to a licensed cartman and provides for storing his cart in front of his premises under certain regulations. Neither section has anything to do with the case like this. The legislature has expressly enacted that the city shall have no power to authorize the placing or continuing of any encroachments or obstructions upon any street or sidewalk, except a temporary occupation thereof during the erection or repair of a building on a lot opposite the highway. (Consolidation Act. Section 86, sub. 4, pp. 25, 26; People ex rel. O'Reilly v. Mayor, etc., 59 How.

Pr. 277; *Ely* v. *Mayor, etc.* v. *Campbell,* Comr. etc., Id. 33; *Levery* v. *Hannigan,* 20 J. & S. 463)."

" The owner of this wagon was not a cartman, nor was the wagon used as a public cart, but only as a means to enable the grocer to transact his own private business. He acquired no right by virtue of the license to store his wagon in the street, and in doing so he was clearly guilty of maintaining a public nuisance. To be sure the legal power to grant a license to obstruct the street was, by the legislature, withheld from the defendant, yet, nevertheless, it did grant just such a permit and took compensation on account of it. In thus doing, the city became a partner in the erection and continuance of such nuisance. It was a nuisance, not by reason of the manner in which the thills were tied up but because the wagon was stored in the street. It was not a mere negative attitude which the defendant adopted, such as would have been the case had it simply acquiesced in the manner in which the street was used. In this case it not only acquiesced in such use, but it actually encouraged it by making out and delivering a license to do it, and it received directly and immediately from the owner of the wagon a compensation for the erection and maintenance of a nuisance under the authority of such license. Under such circumstances the defendant must be held liable the same as if it had itself maintained the nuisance, for the owner of the wagon was nothing more than an agent through whom the defendant did this unlawful act. (*Irvine* v. *Wood,* 51 N. Y. 224.)

Public property cannot be taken for private use, any more than can the constitutional inhibition in the Bill of Rights that private property cannot be taken for public use without just compensation be ignored and treated as a dead letter. (*City of New York* v. *Rice,* 198 N. Y. 124, 128.)

In the matter of the application of George Fiegal for a writ of Mandamus (36 Misc. 27) to compel the Deputy Police

Commissioner to remove obstruction from a certain street, the Supreme Court through Judge Gaynor, now the Mayor of the City of New York, wrote with directness and force on the principles which are applicable here. In directing the issuance of the writ, he said:

"On September 5th, 1899, the Municipal Assembly passed an ordinance that licensed vendors and peddlers be permitted to stand with their wagons and display and sell their wares on both sides of Seigel Street in the road or carriage way between Graham Avenue and Broadway in Brooklyn Borough every day excepting Sunday until midnight. The Mayor approved such ordinance, and the said street has been so used ever since.

It is too well known to need the citation of authorities that there is no power in the Municipal Assembly, or in the City Government in all its departments combined, to appropriate a public street for such a use. This depends on general principles of law which are familiar to lawyers and students of government. But in addition the Charter of the City Contains an express prohibition against the Municipal Assembly passing any ordinance authorizing the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof during the erection or repairing of a building on a lot opposite the same. (Sec. 49, sub. 3.)

The ordinance in question is void, and it is the duty of the respondent to clear the street of the obstructions."

Under the circumstances, I must adjudge the defendants and each of them guilty.

The sentence of the Court is that they and each of them shall be fined the sum of ten dollars and in default of payment thereof, each defendant shall stand committed to the City Prison for a period of ten days.