MILDRED ALLEN, an Infant, by LEWIS J. ALLEN, Her Guardian ad Litem, Respondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.*

Third Department, January 15, 1930.

* Revg. 133 Misc. 618.

*Kernan & Kernan* [*Warnick J. Kernan* of counsel], for the appellant.

*Stanley Bliss*, for the respondent.

DAVIS, J. During the year of 1908 the defendant erected a structure carrying its railroad across Lenox avenue in the city of Oneida. It had the consent of the city to the project and the plans were duly approved by an official of the city. We may assume that the structure was legally made pursuant to the provisions of section 11 of the former Railroad Law of 1890, which is now section 21 of the Railroad Law (as amd. by Laws of 1927, chap. 47; since amd. by Laws of 1928, chap. 546).

The bridge crossed the street at an oblique angle so that the distance between the abutments was one hundred and forty-eight feet. This long carry made necessary the erection of two piers located about midway between the abutments on either side of the railroad structure. The traveled portion of the highway passed on both sides of these piers. For the east-bound traffic there was twenty-four feet of space available, consisting of sixteen and five-tenths feet concrete construction and the remainder being macadam, gravel and earth. On the side devoted to west-bound traffic, there was an earth surface fourteen and six-tenths feet wide, a concrete strip eight and three-tenths feet wide and a gravel surface eight and nine-tenths feet wide occupied by a street car track.

Lenox avenue is a street leading westerly from the city of Oneida toward Syracuse and is much traveled. The point where this railroad bridge crosses it is near the western city boundary where there are no residences and no street lights. The piers were jacketed with concrete so that they were two feet across the face and were marked with the usual black and white diagonal stripes to distinguish them.

On August 28, 1927, the plaintiff was riding with her father in an automobile. They were driving east after dark and the automobile collided with the westerly pier, injuring the plaintiff. She has a verdict for the damages thus sustained.

About two years before the accident the concrete pavement had been laid, and it extended to and around the pier in question which stood near its northerly boundary. It is claimed that the driver was misled by this condition and ran into the pier without seeing it. The defendant was not responsible for that construction and cannot be held liable on that theory alone.

It is familiar law that no one can legally erect dangerous obstructions in the street, thereby creating a nuisance; and that a municipality cannot, without express, delegated powers, permit the unnecessary and unlawful obstruction of a highway. (Highway Law, § 52, as amd. by Laws of 1914, chap. 196; *D., L. & W. R. R. Co.* v. *City of Buffalo*, 158 N. Y. 266; *Town of Mt. Pleasant* v. *City of New York*, 199 App. Div. 315.) And this is true even though the ownership of the fee of the land in the streets is in the municipality. (*City of New York* v. *Rice*, 198 N. Y. 124; *Acme Realty Co.* v. *Schinasi*, 215 id. 495.) Furthermore an unauthorized obstruction in the street is a public nuisance which may be abated by the authorities whether the obstruction was actually a nuisance at the time it was erected or has become so by lapse of time or change of conditions. (*City of Mt. Vernon* v. *N. Y., N. H. & H. R. R. Co.*, 232 N. Y. 309; *City of Olean* v. *Pennsylvania R. R. Co.*, 249 id. 364.) But all of the land in the highway is not necessarily dedicated to public travel. It has always been the rule that the use of portions of the highway by abutting owners and others for their own or public convenience is not unlawful so long as the right of travelers is not unnecessarily or unreasonably interfered with, and if ample width is left for the passage of vehicles. (*Dougherty* v. *Village of Horseheads*, 159 N. Y. 154; *Daly* v. *Rector, etc., of Trinity Church*, 188 App. Div. 280, 282; *Town of Albion* v. *Ryan*, 201 id. 717; *Bailey* v. *Bell Telephone Co.*, 147 id. 224; *Matter of McCoy* v. *Apgar*, 241 N. Y. 71.)

The foregoing discussion of principles as to nuisance would not be necessary in this case except that a majority of the court think there must be a new trial. The complaint alleged a cause of action somewhat inartificially in both nuisance and negligence. The case was tried on the theory of negligence; and by the charge of the learned trial court, the law of the case is that the structure was not unlawful and the defendant was liable only on principles of negligence.

This was the first accident of the kind that had occurred during the period of nearly twenty years of the existence of the bridge in the condition in which it had been erected and maintained. There was nothing to indicate that with the ample roadway furnished on each side, the conditions were dangerous to travel, or that such an accident could reasonably have been anticipated. The rule to which the defendant is held is, " It is the duty of a railroad corporation, both under the statute  *  *  *  and upon common law principles, to keep its road at a crossing in safe condition, so that a traveler upon the highway exercising ordinary care can pass over the same in safety." (*Gale* v. *N. Y. C. & H. R. R. R.*

*Co.*, 76 N. Y. 594.) It does not appear that that rule was violated here. (*Mc Kinney* v. *N. Y. C. & H. R. R. R. Co.*, 66 App. Div. 207; affd., 174 N. Y. 516.) Corporations have not been held liable for negligence under circumstances somewhat similar where there is a necessary structure in the street but there is sufficient space for travel. (*Wegmann* v. *City of New York*, 195 App. Div. 540; *Bailey* v. *Bell Telephone Co.*, *supra*.) If the structure is not obviously dangerous to travelers, but the railroad corporation has merely exercised its legal power and made such crossing so as to cause no unnecessary hindrance or obstacle to travel, though the highway may thereby be less safe than it would if not crossed by the railroad, liability does not necessarily follow if an accident occurs. (*Jones* v. *Waltham*, 4 Cush. 299; 22 R. C. L. 888.)

There was no sufficient proof that the defendant could, by lights or other means, have given a better warning to travelers of this necessary structure, or could have made it more safe by any well-considered plan. No definite, tangible theory of negligence was pointed out, but it was submitted on general principles applicable only to simple cases where ordinary care is required. In a case of this character such theories of liability and instructions are not sufficient. (*Scott* v. *Delaware, L. & W. R. R. Co.*, 222 App. Div. 409, 412.) We think the verdict is based upon surmise and speculation and is against the weight of evidence.

The judgment and order should be reversed on the law and the facts, and a new trial granted, with costs to appellant to abide the event.

WHITMYER and HASBROUCK, JJ., concur; VAN KIRK, P. J., dissents, with an opinion in which HILL, J., concurs.

VAN KIRK, P. J. (dissenting). The plaintiff has recovered a judgment on the verdict of a jury for injuries sustained by her while riding in an automobile driven by her father. They were riding easterly on Lenox avenue in the city of Oneida when the automobile collided with a concrete pier. This pier is one of the piers located along the center of the avenue which support the stringers of defendant's overhead railroad bridge crossing this avenue. The east-going traffic passes southerly of these piers; the west-going northerly of them. The southerly side of the pier with which the automobile collided is nearly four feet southerly from the northerly edge of the concrete as laid for east-bound traffic. The pier consists of a steel column encased in a rectangular concrete jacket about six feet high, the westerly face of which is two feet wide.

When this overhead crossing was projected, the board of public works of the city of Oneida approved the defendant's plans which provided for the overhead bridge to be constructed with two spans supported by "a row of center columns * * * and supporting * * * piers not to exceed two feet in width above the grade line of the street." The construction conforms in all respects with the plans.

The crossing is in the outskirts of the city, where there are no street lights; neither the defendant nor the city placed a light on the bridge or the pier; but, with the intention of making the pier visible, the entire concrete surface was striped with alternate white and black lines, each four inches wide. In the plans approved there was no stipulation in respect to lighting the pier or the bridge, or requiring any warning signals or color markings.

The title to the street is held for the public use. A railroad cannot obstruct the street except on authority from the Legislature. The city has, by statute,* full control of the streets for the common use of all citizens, but the use of a street for a railroad crossing is not part of this common use. We may assume that the Legislature could delegate the necessary power to a city to do that which has been done here. But such a delegation of power will not be implied. "Authority to regulate the use of the streets will not constitute it." (*People ex rel. City of New York* v. *N. Y. R. Co.,* 217 N. Y. 310, 316.)

Section 21 of the Railroad Law is the authority invoked. Under it the defendant could not construct its bridge across the street "without the assent of the corporation of such city;" and, having so constructed the bridge, it must restore the street, "thus intersected or touched, to its former state, or to such state as not to have unnecessarily impaired its usefulness * * *." † Such an assent is a permission only. The assent here was to construct in accord with the approved plans. It left the railroad company liable for its negligence in maintaining the bridge or in failing to protect the public from unnecessary dangers when lawfully using the street. The defendant is not sheltered from damages from injuries sustained by an individual because of an obstruction in the street, unless that obstruction is specifically permitted by the Legislature or its duly delegated agent. (*D., L. & W. R. R. Co.* v. *City of Buffalo,* 158 N. Y. 266, 272.) The approval of the defendant's plans by the board of public works is not the required

---

* See Charter of the City of Oneida (Laws of 1911, chap. 648, § 80, as amd. by Laws of 1916, chap. 63; formerly Laws of 1901, chap. 225, § 72.)— [Rep.

† See Railroad Law of 1890, § 11; now Railroad Law of 1910, § 21, as amd. by Laws of 1927, chap. 47; since amd. by Laws of 1928, chap. 546.— [Rep.

specific permission from the Legislature. The corporation of the city had not authority to surrender any part of the street to the railroad company. (*D., L. & W. R. R. Co.* v. *City of Buffalo, supra,* 273.) The Legislature never delegated to the city council, directly or by implication, such authority. No statute has said where these piers should be placed or how they should be guarded; so, if they be considered a lawful structure, it is still required that they should be so placed and maintained " as to avoid unreasonable and unnecessary danger to travelers " on the street. (*Stern* v. *International R. Co.,* 220 N. Y. 284, 291.)

After the construction was completed in this case, there remained a dangerous condition in that part of the street which was made exclusively for travel, namely, the concrete surface. The pier, standing substantially four feet out into this concrete surface, with no protection of lights, warning signals or guards, constituted a dangerous obstruction improperly guarded; one driving carefully along this surface within a reasonable distance from its edge would collide with this pier. The street was not restored " to such state as not to have unnecessarily impaired its usefulness." (Railroad Law, § 21.) The restoration required by this section is not complete when sufficient unobstructed space is left on the street surface to pass by, or around, the artificial obstruction; the usefulness of the whole improved surface must remain unimpaired so far as reasonably possible. By taking reasonable precautions in restoring the street, by maintaining with reasonable care, by furnishing the traveling public the protection of lights, warning signs or guards, the dangers would have been largely if not entirely removed. I do not think the stripes on the face of the pier were a sufficient substitute for such protection. " Every railroad company which carries its tracks over or along a public highway is required to restore and maintain the highway and the approaches to the crossing in such a safe condition that a traveler exercising ordinary care may pass over the same in safety." (*McKinney* v. *N. Y. C. & H. R. R. R. Co.,* 66 App. Div. 207, 209; affd., 174 N. Y. 516; *Gale* v. *N. Y. C. & H. R. R. R. Co.,* 76 id. 594; *Allen* v. *Buffalo, R. & P. R. Co.,* 151 id. 434.)

I find no error in the charge or rulings which calls for interference by this court.

The judgment and order should be affirmed, with costs.

HILL, J., concurs.

Judgment and order reversed on the law and facts, and new trial granted, with costs to the appellant to abide the event.