68

ARTHUR M. FORTE, as Administrator, etc., of ROBERT FORTE, Deceased, Appellant, *v.* THE CITY OF ALBANY, Defendant, Impleaded with THE NEW YORK CENTRAL RAILROAD COMPANY, M. F. DOLLARD and WILLIAM M. BALLARD, INC., Respondents, and M. F. DOLLARD, JR., INC., Defendant.

JOSEPH KUTTLER, as Administrator, etc., of JOHN KUTTLER, Deceased, Appellant, *v.* THE CITY OF ALBANY, Defendant, Impleaded with Same Defendants, Respondents, and Another, Defendant.

HENRY SWANKER, Appellant, *v.* THE CITY OF ALBANY, Defendant, Impleaded with Same Defendants, Respondents, and Another, Defendant.

CHARLES AUGUSTUS KEEFE, Appellant, *v.* THE CITY OF ALBANY, Defendant, Impleaded with Same Defendants, Respondents, and Another, Defendant.

Third Department, December 29, 1937.

*Begley, Diamond & Begley* [*Alexander Diamond* of counsel], for the appellants.

*Rosendale & Dugan* [*P. C. Dugan* of counsel], for the respondents New York Central Railroad Company and William M. Ballard, Inc.

*Carter & Conboy* [*M. J. Conboy* of counsel], for the respondent M. F. Dollard.

HEFFERNAN, J. Plaintiffs have appealed from judgments and orders of nonsuit of the Albany Trial Term of the Supreme Court.

The facts are stated in the dissenting opinion of Presiding Justice HILL.

We are convinced that plaintiffs failed to establish actionable negligence upon the part of the defendants. The New York Power and Light Corporation had a contract with the city of Albany for lighting the premises. That concern removed the wires from underneath the bridge during the construction. The removal of these wires was done on behalf of the city and not on behalf of the defendant railroad company. That defendant had nothing to do with a public street. In fact the defendant railroad company never maintained any lighting system under the bridge. On the trial plaintiffs' counsel contended that the ramp was the proximate cause of the accident. Not only that but plaintiffs' counsel stated

that he had no complaint about the lighting of the street. The railroad company and its contractor defendant Ballard, Inc., had no authority to interfere with the lighting system. No claim was made by plaintiffs on the trial that the defendant railroad company was negligent because of its failure to remove the steel column supporting the old bridge with which the automobile collided. There is no proof to show that the column should have been removed. The reconstruction of the bridge had not been completed. Obviously train service had to be maintained during the period of construction.

The judgments and orders appealed from should be affirmed, with one bill of costs.

McNamee and Crapser, JJ., concur; Hill, P. J., dissents, with an opinion in which Bliss, J., concurs, except as to defendants M. F. Dollard and M. F. Dollard, Jr., Inc., and as to said defendants vote to affirm.

Hill, P. J. (dissenting). The actions in which these appeals are taken were brought, two by the administrators of deceased occupants and two by surviving occupants of an automobile which, on December 29, 1934, struck a steel pillar which supported the defendant railroad's old overhead bridge at the Central avenue underpass in the westerly part of the city of Albany. The actions were brought against the city of Albany, the New York Central Railroad Company, William M. Ballard, Inc., which had contracted with the railroad company to perform work in connection with building a new railway bridge easterly from and adjacent to the old bridge, and the removal of the old one, and M. F. Dollard, who, under a contract with the State, had constructed a new pavement easterly and westerly from the bridge, and a temporary connection between the new pavement and the old near the easterly end of the old bridge. This temporary pavement extended eight to ten feet east and west; the westerly end where it connected with the old pavement, later to be removed, was about six inches higher than the level of the new pavement. This temporary connecting strip of pavement during the trial was called " the ramp." At the time of the accident the construction of the new railroad bridge had progressed to a point where it was used in whole or in part to carry the railroad company's trains. The old bridge had not been entirely removed. It was supported by steel colonnades. The two adjacent to the old paved roadway were twenty-five feet apart. Between them there was a sixteen-foot brick pavement. The ramp connected the easterly end of this with the new pavement. The automobile in which plaintiffs and plaintiffs' intestates were riding was traveling westerly. When it struck the sudden rise at the ramp, the driver lost control and it crashed into the most

easterly pillar in the north colonnade. Formerly a curb a few inches high bounded the northerly edge of the narrow pavement, and served to some degree as a barrier between the pavement and the pillar.

At the close of the plaintiffs' case the court granted a motion to dismiss the complaint as against all of the defendants except the city. These appeals are from those orders. It is stated in a brief that the case was continued as against the city, and that it resulted in a verdict against the plaintiffs, which has been appealed, but with that appeal we are not now concerned.

Work incidental to the construction of a new railway bridge was progressing at the time of the accident. When the plans were completed, the paved roadway was to be more than fifty feet wide in place of the sixteen-foot pavement over which traffic had passed under the old bridge in the corridor twenty-five feet wide between the two colonnades each containing twelve steel pillars. The railroad company placed these pillars within the bounds of the highway and close to the roadway with the actual or tacit consent and approval of the city. They remained there for many years, but were soon to be removed under the plans for the new improvement. An element of negligence charged against the defendant railroad and its contractor Ballard was that the removal of the pillars had been unnecessarily delayed. The evidence does not sustain this assertion and the location of the pillars presents no legal question different from that which has existed at all times since their erection. However, in passing upon liability, we are required to consider surrounding conditions as of the time of the accident, the removal of the lights and the curb, and the building of the ramp.

Formerly lights had been maintained under the old bridge. During the construction of the new bridge and the demolition of the old one, which had progressed somewhat at the time of the accident, these were removed and none had been installed under the new structure. The only illumination at the point of the accident came from ordinary street lights to the east and west of the two bridges. Witnesses say that under these structures there was a "dark pocket" and little visibility from some feet east of the ramp to and beyond the colonnade. The brilliantly lighted street up to this point would accentuate the darkness.

Public streets are to be devoted primarily to the use of the public, and a railroad company may not so locate pillars or structures therein, even with the consent of a municipality, as to interfere unreasonably and unnecessarily with their safe use by the public for ordinary travel. (*Lambert* v. *Westchester Electric R. R. Co.*, 191

N. Y. 248; *Stern* v. *International Railway Co.*, 220 id. 284; *Allen* v. *New York Central R. R. Co.*, 228 App. Div. 382.) The permission given to the defendant railroad to maintain these pillars, and particularly the one with which this car collided, was upon the implied condition that it was to be so located, lighted and guarded as to avoid unreasonable danger to travelers upon the highway. (*Lambert* v. *Westchester Electric R. R. Co.*, *supra; Stern* v. *International Railway Co.*, *supra; Hill* v. *Mayor, etc., of New York*, 139 N. Y. 495; *Morton* v. *Mayor, etc., of New York*, 140 id. 207; *D., L. & W. R. R. Co.* v. *City of Buffalo*, 158 id. 266.)

It may be a question of law whether the place chosen by the railroad company for the erection of a necessary pillar is dangerous, or it may be for the jury to determine as a question of fact whether the danger created by the location selected was unreasonable and negligent. In determining whether a question of fact or a question of law is presented, consideration is to be given to the surroundings and the necessities for selecting that location, and whether proper barriers, lights and warnings were erected and maintained. (*Stern* v. *International Railway Co.*, *supra.*) The defendant railroad had knowledge that, under certain conditions, the pillars of this identical colonnade did constitute an unreasonably dangerous condition. (*Taylor* v. *City of Albany*, 239 App. Div. 217; affd., 264 N. Y. 539.) In that case ice had formed in the corridor between the colonnades. Upon these appeals from judgments of nonsuit, the plaintiffs' evidence is assumed to be true, and all reasonable inferences in their favor are to be drawn therefrom. The car in which plaintiffs and plaintiffs' intestates were riding was thrown in the air and the driver lost control when it struck the sharp elevation of the ramp. Other cars were thrown similarly when they struck the ramp. The pillar was within three or four feet of the narrow sixteen-foot pavement, and the curb which formerly gave some protection had been removed. At the time when plaintiffs' car was approaching the ramp a car was coming from the west making it necessary to keep close to the northerly edge of the narrow pavement and, therefore, near to the iron pillar. The ramp was not visible to the driver of a car coming from the east because the lights under the old railroad bridge had been removed and none installed under the new structure. It was for a jury to say whether, under these conditions, the railroad company was required to place a warning light at the foot of this pillar as well as to light the surface of the pavement adequately so that travelers would be apprised of the change in grade and the attendant dangers.

The dismissal of the complaint as to the railroad company was error. The defendant M. F. Dollard constructed the ramp in

accordance with plans furnished and as directed by the agents of the State of New York and the city of Albany. Before the accident he had completed his contract and the work had been accepted and approved by the municipalities. It was not the contractor's duty to determine the grade in the temporary pavement. His belief in regard to its safety was without significance. He knew that such inspection as he gave would be followed by inspections both by the State and city. He had not created a nuisance *per se.* It became dangerous only if there was a failure properly to light the area and to warn travelers of the sudden change in grade. The complaint was properly dismissed against him. (*Turner* v. *City of Newburgh,* 109 N. Y. 301; *Bergen* v. *Morton Amusement Co., Inc.,* 178 App. Div. 400; affd., 226 N. Y. 665.)

The judgments and orders dismissing the complaint as against the defendants New York Central Railroad Company and William M. Ballard, Inc., should be reversed on the law, and a new trial granted, with costs to the appellant to abide the event. The dismissals as to the defendant Dollard should be affirmed, with costs.

BLISS, J., concurs.

Judgments and orders affirmed, with costs in one action.